[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

_____

Nos. 00-13180 & 00-14012

_____

D. C. Docket No. 99-08063-CR-JLK

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 12, 2003
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JOHN ROBERT HASSON,
a.k.a. Heloneti Galera,
a.k.a. Jack Hasson,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(June 12, 2003)

Before EDMONDSON, Chief Judge, ANDERSON, Circuit Judge, and POGUE*,
Judge.

_____
　　　　*Honorable Donald C. Pogue, United States Judge for the United States Court of
International Trade, sitting by designation.

ANDERSON, Circuit Judge:

This case comes to us on direct appeal from a criminal conviction, forfeiture, and sentencing. Defendant-appellant John Robert Hasson ("Hasson") was convicted of conspiracy to commit wire fraud, wire fraud, conspiracy to launder money, and conspiracy to obstruct justice. Hasson was sentenced to 480 months imprisonment, ordered to forfeit several properties, and ordered to pay restitution. On appeal, Hasson challenges the sufficiency of the evidence to demonstrate wire fraud, conspiracy to commit wire fraud, and conspiracy to launder money, and the legality of the restitution and forfeiture ordered against him. For the reasons stated below, we hold that the convictions and sentence imposed should be affirmed.

## I. BACKGROUND

### A. Factual Background

Between 1981 and 1998, Hasson owned and operated an upscale jewelry and gift store in North Palm Beach, Florida. His store catered to the Palm Beach area's wealthy and famous residents and visitors. His customers frequently spent thousands or hundreds of thousands of dollars on fine gems and jewelry. Not all of his customers, however, got what they bargained for. Hasson sold several customers gems, jewelry, and decorative pieces that failed to match the descriptions

he gave. Hasson frequently supported his representations with false appraisals prepared by himself or by a co-conspirator falsely represented to have been independent. Hasson also misrepresented his own credentials to give weight to those appraisals and sometimes provided forged appraisals purporting to have been prepared by third parties.

B. Procedural History

On May 24, 1999, Hasson was charged by superseding indictment with one count of conspiracy to commit mail and wire fraud in violation of 18 U.S.C. § 371, four counts of wire fraud in violation of 18 U.S.C. § 1343, two counts of mail fraud in violation of 18 U.S.C. § 1341, one count of conspiracy to launder money in violation of 18 U.S.C. § 1956(h), and one count of conspiracy to obstruct justice in violation of 18 U.S.C. § 371. Hasson and his confederates were alleged to have conspired from 1984[1] through 1999 to devise a scheme "to enrich themselves by defrauding diamond, jewelry and collectibles purchasers of their funds" by means of misrepresenting Hasson's credentials; misrepresenting the various characteristics of items sold; providing false and forged appraisals; misrepresenting Hasson's clientele; billing for fictitious services; substituting flawed, synthetic, or simulant[2]

---

[1]    The government stipulated before trial that the conspiracy began in 1988.

[2]    A synthetic stone is man-made. A synthetic ruby is, chemically, a ruby, but it is not natural. A simulant is a stone that is chemically different from, but visually similar to, another gem. Cubic zirconium, for example, is a diamond simulant.

stones for more valuable gems; creating false scenarios to induce purchases; and covering up the scheme by blaming employees and settling fraud claims under confidentiality agreements. Four interstate wire transmissions and two uses of the mails provided the bases for the substantive counts of mail and wire fraud, though one count of wire fraud was dropped.[3]

The charged object of the conspiracy to launder money, alleged to exist from 1995 to 1999, was to launder the proceeds of the mail and wire fraud by engaging in financial transactions with such proceeds with the purpose of promoting mail and wire fraud and with the purpose of concealing the source, location, or ownership of proceeds of mail and wire fraud in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (a)(1)(B)(i), and (a)(2)(B)(i) and by engaging in financial transactions of $10,000 or more with the proceeds of mail and wire fraud in violation of 18 U.S.C. §1957. The charged object of the conspiracy to obstruct justice was to conceal Hasson's and his co-conspirators' involvement in mail and wire fraud and money laundering by witness tampering in violation of 18 U.S.C. § 1512(b) and obstructing justice in

---

[3]     At trial, the government introduced evidence of other uses of the wires and uses of the mails and private or commercial interstate carriers that were not charged as separate substantive counts in the indictment. For example, Hasson and co-conspirators would order gems and synthetics from out-of-state suppliers by phone, intending to fraudulently resell those gems, and delivery of those stones to Hasson's store were by mail or by commercial carrier. (On September 13, 1994, the mail fraud statute was amended to criminalize the use of private or commercial interstate carriers for the purpose of executing a scheme to defraud. Pub. L. No. 103-322, Title XXV, § 250006, 108 Stat. 1796, 2087 (1994).)

4

violation of 18 U.S.C. § 1503.

Following a seven-week trial, the jury returned a guilty verdict convicting Hasson of conspiracy to commit wire fraud, three counts of wire fraud, conspiracy to launder money, and conspiracy to obstruct justice. The jury found that the objects of the conspiracy to launder money were violations of 18 U.S.C. §§ 1956(a)(1)(A)(i) (promotion of unlawful activity), (a)(1)(B)(i) (concealment of unlawful activity), and 1957 (transaction involving more than $10,000 in unlawful proceeds). The jury found that the object of the conspiracy to obstruct justice was a violation of 18 U.S.C. § 1503.

Following the trial, a criminal forfeiture proceeding was held under 18 U.S.C. § 982. The jury found that $40 million in cash, the contents of seven bank and brokerage accounts, and two parcels of real estate in Jupiter, Florida, and Breckenridge, Colorado, were involved in or traceable to property involved in the conspiracy to launder proceeds of mail and wire fraud. The properties were thus ordered forfeited. Following a sentencing hearing, Hasson was sentenced to 480 months imprisonment and ordered to pay $78,408,691 in restitution to four victims under 18 U.S.C. § 3663A.

We now turn to Hasson's challenges to his convictions, forfeiture order, and sentence. He argues that the evidence is insufficient to prove wire fraud or

conspiracy to commit wire fraud, that the evidence is insufficient to prove a conspiracy to launder money, that the restitution ordered against him fails to account for amounts paid victims in civil settlements, and that the forfeiture order and restitution are excessive fines.[4]

## II. SUFFICIENCY OF THE EVIDENCE

The sufficiency of the evidence to support a conviction is reviewed de novo. United States v. Miles, 290 F.3d 1341, 1355 (11th Cir.), cert. denied, ___ U.S. ___, 123 S.Ct. 707 (2002). The record is viewed in the light most favorable to the verdict, drawing all reasonable inferences and resolving all questions of credibility in favor of the government. Viewed in such a light, the verdict will be affirmed if a reasonable juror could conclude that the evidence establishes guilt beyond a reasonable doubt. Id. We review de novo questions regarding the legality of a restitution order. United States v. Cobbs, 967 F.2d 1555, 1556 (11th Cir. 1992). We review factual findings underlying a restitution order for clear error. United States v. Vaghela, 169 F.3d 729, 736 n.6 (11th Cir. 1999). We review the legality

---

[4] Hasson raises various other challenges to his convictions, including a challenge to the sufficiency of the evidence to prove a conspiracy to obstruct justice in violation of 18 U.S.C. § 1503. Evidence introduced at trial that Hasson and a co-conspirator suborned perjured grand jury testimony and that Hasson submitted false documents in response to a grand jury subpoena is sufficient to support this conviction. We have carefully reviewed the remaining challenges and, finding them without merit, reject them without further discussion.

of the forfeiture order <u>de novo</u> and the jury's factual findings for the sufficiency of the evidence. <u>See</u> <u>United States v. Goldin Indus.</u>, 219 F.3d 1271, 1278 (11th Cir. 2000) (reviewing RICO forfeiture for sufficiency of the evidence).

A. <u>Sufficiency of the Evidence to Prove Wire Fraud and the Conspiracy to Commit Wire Fraud</u>

The elements of wire fraud under 18 U.S.C. § 1343 are (1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme. <u>United States v. Ross</u>, 131 F.3d 970, 984 (11th Cir. 1997).[5] To "cause" the interstate wires to be used, the use of the wires need not be actually intended; it need only be reasonably foreseeable. <u>Id.</u> at 985.

The elements of a conspiracy under 18 U.S.C. § 371 are (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement. <u>United States v. Adkinson</u>, 158 F.3d 1147, 1153

---

[5]

"Whoever, having devised or intending to devise any scheme or artifice to defraud . . . transmits or causes to be transmitted by means of wire . . . in interstate or foreign commerce, any . . . signals . . . for the purpose of executing such scheme or artifice, shall be fined . . . or imprisoned . . . or both."

18 U.S.C. § 1343 (2000).

(11th Cir. 1998).[6] To prove a conspiracy to commit wire fraud, the government need not demonstrate an agreement specifically to use the interstate wires to further the scheme to defraud; it is enough to prove that the defendant knowingly and voluntarily agreed to participate in a scheme to defraud and that the use of the interstate wires in furtherance of the scheme was reasonably foreseeable. Ross, 131 F.3d at 981; United States v. Smith, 934 F.2d 270, 275 (11th Cir. 1991).

Hasson challenges his convictions for wire fraud and conspiracy to commit wire fraud on the same bases. First, he argues that the government did not prove a scheme to defraud because the misrepresentations he made, if any, pertained solely to the market values of the items sold, which, he claims, were easily verifiable or were otherwise easily discernible to a person of ordinary prudence. Second, he argues that the government did not prove the use of the interstate wires in furtherance of the scheme to defraud because the uses of the wires were unforeseeable and were made to make payments for items with regard to which no material misrepresentations were made.

1. Scheme or artifice to defraud

---

[6]
"If two or more persons conspire . . . to commit any offense against the United States . . . in any manner or for any purpose and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined . . . or imprisoned . . . or both."

18 U.S.C. § 371 (2000).

8

A scheme to defraud requires proof of material misrepresentations, or the omission or concealment of material facts, Neder v. United States, 527 U.S. 1, 25, 119 S.Ct. 1827, 1841 (1999), reasonably calculated to deceive persons of ordinary prudence, United States v. Brown, 79 F.3d 1550, 1557 (11th Cir. 1996) (construing the mail fraud statute).[7] That is, not all misrepresentations or omissions constitute a scheme to defraud; the misrepresentation or omission must be material and it must be one on which a person of ordinary prudence would rely. A material misrepresentation is one having a natural tendency to influence, or capable of influencing, the decision maker to whom it is addressed. Neder, 527 U.S. at 16, 119 S.Ct. at 1837. A person of ordinary prudence would not rely on all misrepresentations. Puffery, for example, is not part of a scheme to defraud because a person of ordinary prudence would not rely on it; nor would a person of ordinary prudence engaged in an arm's-length purchase rely on the seller's representations regarding the market value of the property when the market value can be, and should be, easily verified by consulting other sources. Brown, 79 F.3d at 1559.

The record in this case is replete with evidence of material misrepresentations

---

[7] The "scheme or artifice to defraud" and "for the purpose of executing" language in the mail and wire fraud statutes are construed identically. Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991).

regarding the physical and objective characteristics of the gems and jewelry sold. The government established that Hasson repeatedly misrepresented the carat weight, color grading, and clarity grading of gems; misrepresented semi-precious gems, synthetic gems, or simulants as natural gems and diamonds; misrepresented stones that had been color- or clarity-treated as natural stones; and misrepresented the history or provenance of items sold. The hundreds of misrepresentations made over the life of the conspiracy are too numerous to catalogue here.[8] Hasson's conduct simply cannot be analogized to the mere misrepresentation of accessible market values which, as we held in Brown, could not be reasonably calculated to induce purchase by a person of ordinary prudence. These repeated affirmative misrepresentations of physical characteristics of the items also defeats Hasson's reliance on Langford v. Rite-Aid of Ala., 231 F.3d 1308 (11th Cir. 2000) (retail seller's failure to disclose its pricing practices to customers is not a material

---

[8] The following is a brief, and incomplete, summary. In a diamond broach sold to Greg Norman, Hasson misrepresented 11 diamonds irradiated to enhance their color as natural stones. In a sale to John Campbell, Hasson misrepresented a 24.89-carat yellow diamond with a color grade of U to V and clarity grade of VS1 as an internally flawless fancy intense yellow diamond. Hasson sold Lawrence Dixon several ivory carvings by misrepresenting their history and provenance. Hasson sold James Cunningham two diamonds, misrepresenting a 29.85-carat fancy light yellow diamond with a clarity grade of VS2 as an internally flawless 30.16-carat fancy intense yellow diamond and misrepresenting a 13.16-carat diamond with a color grade of X to Y and clarity grade of VS1 as an internally flawless 14.02-carat fancy intense yellow diamond. In sales to Aben and Joan Johnson, Hasson misrepresented the type of gems or stones in 314 items and the history and provenance of at least 80 items and gems. He also treated 53 stones sold to the Johnsons as natural and induced them to purchase hundreds of stones by misrepresenting the interest of certain buyers in purchasing the Johnsons' gem and jewelry collection. Most of these items were misrepresented in multiple characteristics.

10

omission that can support mail or wire fraud liability).

There was also ample testimony regarding the special training and equipment required to evaluate the physical qualities of fine gems and jewelry from which the jury could reasonably conclude that the misrepresentations were not easily verifiable by the person of ordinary prudence. Furthermore, Hasson prepared false appraisals and arranged for false appraisals prepared by co-conspirator posing as an independent appraiser, creating the impression that his representations *were* independently verified and making it unlikely that a person of ordinary prudence would invest the time and expense to obtain second or third evaluations of the items purchased. Cf. Brown, 79 F.3d at 1558 n.13 (considering factors influencing the decision of a person of ordinary prudence to invest resources in independent investigation).

2. Use of the Wires in Furtherance of the Scheme to Defraud

A scheme to defraud is not, by itself, a federal crime. To support the convictions for wire fraud, the government must prove not only a scheme to defraud, but must also prove that the interstate wires were knowingly used in furtherance of the scheme or that such use was reasonably foreseeable. Ross, 131 F.3d at 984-85. In this case, Hasson was convicted of three substantive counts of wire fraud. The interstate wires which were the subject of the substantive counts

were three wire transfers made by Aben Johnson, the principal victim of the scheme, from his Michigan bank account to Hasson's Florida bank account. These wire transfers took place on March 6, 1995, for $300,000; May 14, 1996, for $287,500; and July 11, 1996, for $290,000.

### a. Foreseeability of the Use of the Wires

An essential element of the scheme to defraud in <u>Ross</u> involved establishing a shell corporation in Florida to purchase a piece of real estate from a Mississippi corporation. We held that it was reasonably foreseeable that correspondence necessary to effectuate the purchase would be sent over the wires from the Mississippi office of the selling corporation's chief counsel to the conspirators' attorney in Florida. <u>Ross</u>, 131 F.3d at 985.

We think that the wire transfers in this case were also reasonably foreseeable. Mr. and Mrs. Johnson maintained homes in both Florida and Michigan during the time when they purchased gems and jewelry from Hasson and, as was clear from many of the checks written by the Johnsons, maintained out-of-state bank accounts. It was foreseeable that these customers would at some point make use of the interstate wires to transfer large sums of money to complete some of their many expensive purchases. <u>Accord</u> <u>Ross</u>, 131 F.3d at 985.

### b. For the Purpose of Executing the Scheme

12

We now turn to the question of whether these wire transfers were "cause[d] to be transmitted . . . for the purpose of executing" the scheme to defraud. 18 U.S.C. § 1343. Hasson contends that the wire transfers were made to purchase items with regard to which no material misrepresentations were made. Because the underlying sales were legitimate, Hasson argues, these wire transfers were not caused "for the purpose of executing" the scheme to defraud.

To violate the wire fraud statute, it is not necessary that the transmitted information include any misrepresentation. Schmuck v. United States, 489 U.S. 705, 715, 109 S. Ct. 1443, 1450 (1989) (construing mail fraud statute). The transmission itself need not be essential to the success of the scheme to defraud. An interstate wire transmission is "for the purpose of executing" the scheme to defraud if it is "incident to an essential part of the scheme" or "a step in the plot." Id. at 710-11, 109 S.Ct. at 1447-48 (citations omitted).

The March 6, 1995, wire transfer was for the purchase of two items, one of which was represented to the Johnsons as a diamond ring featuring a flawless 22.11-carat diamond with a color grade of D. These representations were supported with an appraisal prepared by a co-conspirator and provided by Hasson. This ring in fact featured an 11.37-carat diamond with a clarity grade VS2 and a color grade L to M. Several physical characteristics of this ring were misrepresented - the carat

13

weight, clarity, and color grade of the diamond. We think the jury could reasonably have concluded that these misrepresentations were material and that the purchase was fraudulently induced. This wire transfer was an interstate transmission over the wires caused for the purpose of executing the scheme to defraud.

The May 14 and July 11, 1996, wire transfers were made to purchase a diamond necklace and pin. Hasson originally sold these pieces of jewelry to the Johnsons on July 21, 1990, for $370,000. Hasson bought the two pieces back on December 7, 1994, as part of a repurchase of five items he had sold the Johnsons. Hasson later induced the Johnsons to repurchase these two pieces, falsely representing that a potential buyer of the Johnsons' gem and jewelry collection, the Sultan of Brunei, was interested in completing this very substantial purchase only if these items were included in the transaction. The Johnsons repurchased the two pieces of jewelry for $577,500.

Although Hasson is correct that the government introduced no evidence that the physical and objective characteristics of these two pieces of jewelry were misrepresented, the transaction was part of a larger fraudulent scheme, and the sale of even these two pieces was specifically induced by the misrepresentation about the potential resale to the Sultan. The Sultan was at the center of an elaborate con devised by Hasson to induce the Johnsons to purchase more misrepresented items

14

between 1995 and 1997. Hasson represented that the Sultan was a diamond collector interested in purchasing the Johnsons' jewelry collection for a very substantial sum of money. The con included paying co-conspirators to play the roles of the Sultan's nephew and the nephew's entourage at a meeting between Johnson and the "nephew" held on Hasson's private jet, disguised as the nephew's jet, in late 1995, and at a similar meeting held in a limousine at the Palm Beach airport in late 1996. As a result of Hasson's representations regarding the Sultan's interest and proposed purchase price, the Johnsons spent many millions of dollars on gems to enhance the value of their collection to the Sultan. Almost all of the gems purchased were misrepresented as to their physical composition, carat-weight, color grade, clarity grade, and/or provenance. Included in these purchases were the necklace and pin paid for by the May 11 and July 14, 1996, wire transfers. Hasson specifically represented that the Sultan wanted these two pieces of jewelry included in the Johnsons' collection because they had been stolen from the Sultan's mother. Hasson represented that the failure to include the jewelry was a potential deal-breaker.

We readily conclude that the use of the wires to make payment for the two pieces of jewelry whose purchase was fraudulently induced was "for the purpose of executing" the scheme to defraud. Hasson's misrepresentations regarding a specific

15

interested buyer and the magnitude of that buyer's proposed purchase and his misrepresentation that the deal was dependent on the number and quality of items in the jewelry collection, were material to the Johnsons' decision to purchase the jewelry. Unlike the misrepresentations in <u>Brown</u>, which related solely to market value and were easily verifiable, the misrepresentations in the instant case were part of a large scheme to defraud, including not only misrepresentations as to value but also misrepresentations as to the physical and objective characteristics of jewelry sold as part of the scheme, and misrepresentations with respect to the potential resale to the Sultan. The wire transfers were caused for the purpose of executing this scheme.

The instant case is unlike <u>Brown</u> in two additional respects. First, the nature of the misrepresentations here was such that they were not easily verifiable. Also, the Johnsons were fraudulently induced into believing that there was independent verification, both by the appraisals falsely represented to have been independent, and by the fraudulent, elaborately-staged meetings with the "Sultan's nephew." A reasonable jury in this case could find that these two aspects of the scheme to defraud inhibited a person of ordinary prudence in discovering the truth, making the Johnsons' reliance on Hasson's representations reasonable.

The convictions for the three counts of wire fraud and one count of

16

conspiracy to commit wire fraud are supported by sufficient evidence.

B. Sufficiency of the Evidence to Prove the Conspiracy to Launder Money

18 U.S.C. § 1956(h)[9] makes it a federal crime to conspire to violate any provision of §§ 1956 or 1957, the federal money laundering statutes. Hasson was convicted of conspiring to promote specified unlawful activity using proceeds derived from unlawful activity and conspiring to conceal proceeds derived from specified unlawful activity in violation of § 1956(a)(1)(A)(i) and (a)(1)(B)(i),[10] and of conspiring to engage in a monetary transaction in criminally derived property greater than $10,000 in value and derived from unlawful activity in violation of §

---

[9] "Any person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

18 U.S.C. § 1956(h) (2000).

[10] "(a)(1) Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity--
(A)(i) with the intent to promote the carrying on of specified unlawful activity; or
. . .
(B) knowing that the transaction is designed in whole or in part--
(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity . . .
shall be sentenced to a fine . . . or imprisonment . . . or both."

18 U.S.C. § 1956 (2000).

17

1957.[11]  Mail and wire fraud constitute "specified unlawful activity" under the statutes.  18 U.S.C. § 1956(c)(7)(A) (incorporating RICO predicate offenses listed in 18 U.S.C. § 1961(1)).

Hasson's primary argument that the evidence is insufficient to demonstrate a conspiracy to launder money relies on his contention that the evidence is insufficient to demonstrate that the laundered funds were proceeds of wire fraud.  For the reasons stated above, the evidence is sufficient to support the jury's finding in this regard.

Hasson also argues that the evidence is insufficient to demonstrate his intent to conceal the proceeds of mail and wire fraud from anyone other than his ex-wife.  The evidence demonstrated that Hasson funneled the proceeds of mail and wire fraud through several accounts held under fictitious names and opened with forged documents, including an account held in the name of a shell corporation in the Isle of Man.  Hasson lied to FBI investigators and to an IRS agent about the nature of his relationship with this shell corporation, which he owned in fact (though not in name).  The evidence is clearly sufficient to demonstrate Hasson's attempts to

---

[11]

"Whoever . . . knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, shall be punished as provided in subsection (b)."

18 U.S.C. § 1957(a) (2000).

18

conceal the source, ownership, location or control of the funds from the FBI and the IRS. His argument furthermore fails to address the jury's finding that the conspiracy also had the objects of promoting unlawful activity and of engaging in financial transactions with criminally derived property with a value greater than $10,000.

The conviction for conspiracy to launder money is supported by sufficient evidence.

## III. Forfeiture and Restitution

In addition to Hasson's 480-month prison sentence, he was ordered to pay over $78 million in restitution to four victims of the scheme to defraud and ordered to forfeit several accounts and properties, including a particular account in the amount of $20,346,390.51. Hasson argues that the restitution order is in error because it fails to offset for amounts Hasson has paid victims of the scheme to defraud in civil settlements, that the restitution and forfeiture orders are based on acquitted conduct, and that the restitution order and forfeiture of the $20 million[12] are unconstitutional excessive fines.

---

[12] Careful review of the briefs and the transcript of the oral argument reveals that Hasson only challenges the portion of the forfeiture order forfeiting $20,346,390.51 from a particular account held in the name of Heloneti Galera, Trustee for the benefit of Peter Westbrook.

A. Restitution Offset

The restitution in this case was required by 18 U.S.C. § 3663A (2000), part of the amendments to the Victim and Witness Protection Act ("VWPA"), Pub. L. No. 97-291, 96 Stat. 1248 (1982) (codified as amended at 18 U.S.C. §§ 1512 et seq., 3579 et seq.) made by the Mandatory Victims Restitution Act ("MVRA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Section 3663A requires a court, "when sentencing a defendant," to order the defendant to "make restitution to the victim of the offense," § 3663A(a)(1), whenever the defendant is convicted of an offense "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss," § 3663A(c)(1)(B). In the case of a conviction for an offense that "involves as an element a scheme, conspiracy, or pattern of criminal activity," a "victim" is "any person directly harmed by the defendant's conduct in the course of the scheme, conspiracy, or pattern." § 3663A(a)(2).[13] The court is required to order restitution "in the full amount of each victim's losses," § 3664(f)(1)(A). Disputes over the amount of the restitution are to be resolved by a preponderance of the evidence. §

---

[13] Section 3663A(a)(2) uses language identical to that found in 18 U.S.C. § 3663(a)(2). That language was added by Pub. L. No. 101-647, 104 Stat. 4789, 4863 (1990) (amended without substantive changes by Pub. L. No. 104-132, 110 Stat. 1214, 1229 (1996)), which supersedes our interpretation of § 3663(a) in United States v. Stone, 948 F.2d 700, 704 (11th Cir. 1991), that restitution for mail or wire fraud is limited to the specific act of fraud underlying the mailing or use of the wires for which the defendant is convicted, rather than the entire scheme or artifice to defraud furthered by the mailing or use of the wires. See United States v. Obasohan, 73 F.3d 309, 311 (11th Cir. 1996).

20

3664(e).[14]

The probation officer preparing the Presentence Investigation Report ("PSR") recommended restitution to four victims of the conspiracy and scheme to defraud in amounts totaling $78,408,691. In response to the PSR, Hasson filed several objections, none of which contested the restitution order. On appeal, Hasson, presumably relying on § 3664(j)(2),[15] contends that the restitution order is in error because it compensates three victims whom Hasson had already compensated through civil settlements without offsetting by those amounts.

Because the offset objection was not raised below, we review this aspect of the restitution order for plain error. Fed. R. Crim. P. 52(b); United States v. Jones, 289 F.3d 1260, 1265 (11th Cir.), cert. denied, ___ U.S. ___, 123 S.Ct. 661 (2002).

---

[14]

"Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires."

18 U.S.C. § 3664(e) (2000).

[15]

"Any amount paid to a victim under an order of restitution shall be reduced by any amount later recovered as compensatory damages for the same loss by the victim in-- (A) any Federal civil proceeding; and (B) any State civil proceeding, to the extent provided by the law of the State."

18 U.S.C. § 3664(j)(2) (2000).

21

We will reverse only if there is (1) error, (2) that is plain, and (3) affected the defendant's substantial rights. If these three conditions are found, we may reverse if we decide the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding. Id.

In Jones, we held that a sentencing court does not commit plain error by relying on factual findings contained in the PSR regarding a defendant's ability to pay restitution when the defendant does not introduce evidence on the issue or object to the PSR's findings in that regard. Id. at 1266. Hasson's civil settlements occurred before sentencing. The fact and amount of compensation paid by Hasson to victims pursuant to civil proceedings and whether the compensation was for the "same loss" are issues well within Hasson's ability to bring to the attention of either the probation officer or the sentencing court, yet he failed to do so. We conclude that the court below did not err by relying on the factual findings in the PSR and ordering Hasson to pay the full amount of the victims' losses.

B. Excessive Fine

Hasson argues that the forfeiture of $20,346,390.51 and the restitution of $77,772,881 to the Johnsons are excessive fines[16] because the jury convicted Hasson of only three substantive wire fraud counts where the amount involved in

---

[16] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

the wire transfers was $877,500. Hasson apparently contends that the amounts involved in the conspiracy to commit wire fraud and the conspiracy to launder money must be proven beyond a reasonable doubt and that the government only proved that Hasson realized $877,500 in proceeds of wire and mail fraud beyond a reasonable doubt. Because Hasson's Excessive Fines Clause challenge is founded on an erroneous premise, and because he does not challenge the constitutionality of the forfeiture and restitution orders on any other basis, we reject this challenge.

1. Forfeiture Order

The forfeiture in this case was authorized by 18 U.S.C. § 982 (2000), which requires a court to order a defendant convicted of an offense in violation of 18 U.S.C. § 1956 to order the forfeiture of "any property, real or personal, involved in such offense, or any property traceable to such property." 18 U.S.C. § 982(a)(1). 21 U.S.C. § 853 governs the procedure for ordering the forfeiture. 18 U.S.C. § 982(b)(1).

The court instructed the jury that the government must prove the elements of forfeiture under § 982(a) by a preponderance of the evidence. Hasson did not object to this instruction, which his argument on appeal challenges. We review the instruction for plain error. See United States v. Hall, 312 F.3d 1250, 1259 (11th Cir. 2002) (jury instruction reviewed for plain error when the defendant did not

23

object). We conclude that the elements of forfeiture under 18 U.S.C. § 982(a) must be proven by a preponderance of the evidence, and therefore this instruction was not plain error.

a. Standard of Proof at the Forfeiture Hearing

We have held that the elements of forfeiture under 21 U.S.C. § 853(a)(1) and (a)(2) must be proven under the preponderance standard. See United States v. Dicter, 198 F.3d 1284, 1289-90 (11th Cir. 1999) (§ 853(a)(2)); United States v. Elgersma, 971 F.2d 690, 697 (11th Cir. 1992) (en banc) (§ 853(a)(1)). We have also said that, generally, criminal forfeiture is part of sentencing where the preponderance standard governs. United States v. Cabeza, 258 F.3d 1256, 1257-58 (11th Cir. 2001) (rejecting a challenge to criminal forfeiture under the drug statutes based on Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348 (2000)). See also Libretti v. United States, 516 U.S. 29, 39, 116 S.Ct. 356, 363 (1995) ("Forfeiture is an element of the sentence imposed *following* conviction . . . . Our precedents have . . . characterized criminal forfeiture as an aspect of punishment imposed following conviction of a substantive criminal offense.") (discussing applicability of Fed. R. Crim. Proc. 11(f) to forfeiture count under 21 U.S.C. § 853). But see Goldin Indus., 219 F.3d at 1278 n.10 (reserving question of whether forfeiture under 18 U.S.C. § 1963(a)(1) and (a)(3) is governed by preponderance or reasonable doubt standard).

24

The standard of proof that applies to a forfeiture hearing under 18 U.S.C. § 982(a)(1) is a question of statutory construction. Elgersma, 971 F.2d at 694. In Elgersma, we relied primarily on 21 U.S.C. § 853(d) as evidence of Congressional intent to require the elements of forfeiture under § 853(a)(1) to be proven by a preponderance. Id. at 694. Section 853(d) creates a rebuttable presumption that the defendant's property is forfeitable when the government proves, by a preponderance of the evidence, that the property was acquired by the defendant during or soon after the commission of an offense that triggers the forfeiture provision and that "there was no likely source for such property other than the violation." 21 U.S.C. § 853(d); Elgersma, 971 F.2d at 694. Because the property described in § 853(d) is the same type of property as that described in § 853(a)(1) ("property constituting, or derived from, any proceeds obtained . . . as the result of such violation"), we concluded that Congress contemplated demonstrating the elements of forfeiture under § 853(a)(1) by a preponderance of the evidence. Elgersma, 971 F.2d at 694.

In Dicter, we concluded that nothing in § 853 evinces an intent to apply a higher standard of proof to the elements of forfeiture under § 853(a)(2). Dicter, 198 F.3d at 1289. We also noted that the introductory language of § 853(a) clearly indicates that forfeiture under that provision is an element of sentencing. Id. The statute requires the forfeiture to be ordered against a person already convicted of a

25

substance offense. The court is required to order the forfeiture when "imposing sentence" on the defendant, "in addition to any other sentence imposed[.]" Noting that the preponderance standard generally applies to sentencing matters, Dicter, 198 F.3d at 1289 (citing United States v. Barakat, 130 F.3d 1448, 1452 (11th Cir. 1997)), we concluded that Congress intended the preponderance standard to apply to § 853(a)(2), as well. Id.

Our analysis in Dicter applies with equal force to the language of 18 U.S.C. § 982(a)(1). The subsection requires an order of forfeiture against "a person convicted of [a money laundering] offense." The court is required to order forfeiture "in imposing sentence" on the defendant. This language clearly indicates Congressional intent that forfeiture under § 982(a)(1) is part of the sentencing process, where the preponderance standard generally applies. See Barakat, 130 F.3d at 1452; accord Dicter, 198 F.3d at 1289. See also United States v. Bornfield, 145 F.3d 1123, 1138 n.12 (10th Cir. 1998) (forfeiture under § 982 is a sentencing issue).

The parallels between § 982 and 21 U.S.C. § 853 are reinforced by § 982(b)(1), which provides that forfeiture under § 982 "shall be governed by the provisions of" 21 U.S.C. § 853. While the presumption described in § 853(d) does not apply to § 982 forfeitures, see 18 U.S.C. § 982(b) (the provisions of 21 U.S.C. §

26

853 govern, "other than subsection (d) of that section"), subsection (d) did not create the preponderance standard governing § 853 forfeitures; it is simply clear evidence of Congress's understanding that the preponderance standard governs such forfeitures. It is perfectly reasonable for Congress to adopt the standard of proof under 21 U.S.C. § 853 for forfeitures under 18 U.S.C. § 982(a), but not the rebuttable presumption of § 853(d). Section 982(b)'s incorporation of a forfeiture provision that applies a preponderance standard is clear evidence of Congressional intent to apply the preponderance standard to forfeitures under § 982(a).[17] Cf. United States v. 1988 Chevrolet Silverado, 16 F.3d 660, 663-64 (5th Cir. 1994) (burden of proof in forfeiture under 19 U.S.C. § 1615 incorporated by 18 U.S.C. § 512, which states that "[a]ll . . . procedures for summary and judicial forfeiture applicable to [customs laws] violations [(19 U.S.C. § 1615)] . . . shall apply to forfeitures under this section").

   b. Sufficiency of the Evidence

The jury was properly instructed that the government was required to prove the elements of forfeiture by a preponderance of the evidence. The jury returned a

---

[17] This holding is consistent with the interpretation of 18 U.S.C. § 982 by other circuits. See United States v. Rutgard, 116 F.3d 1270, 1293 (9th Cir. 1997) (preponderance standard governs forfeitures under § 982(a)(1)); United States v. Voigt, 89 F.3d 1050, 1084 (3d Cir. 1996) (same); United States v. Myers, 21 F.3d 826, 829 (8th Cir. 1994) (same).

27

detailed special verdict[18] identifying each of the forfeited properties and accounts

(including the $20,346,390.51) as property that "constitutes property involved in the

offense charged in Count Eight of the Indictment and/or constitutes property

traceable to such property." Count Eight charged a conspiracy to launder the

proceeds of mail and wire fraud. The special verdict, then, shows that the jury

found, by a preponderance of the evidence, that the $20 million was involved in, or

traceable to property involved in, the conspiracy to launder the proceeds of mail and

wire fraud.

Property is "involved in" a money laundering transaction if the transaction

involves the proceeds of mail or wire fraud and the transaction had the purpose of

concealing the proceeds or promoting mail or wire fraud, or involved more than

$10,000 in proceeds of mail or wire fraud. In determining what transactions

involved the proceeds of mail and wire fraud, the jury was not restricted to the three

substantive counts of wire fraud on which it returned a guilty verdict. The jury was

free to reconsider evidence of acquitted conduct under the preponderance standard,

cf. Barakat, 130 F.3d at 1452, and to consider evidence of mail and wire frauds

adduced by the government in support of the money laundering count, though not

_____

    [18]        Hasson did not object to the form of the special verdict below or to the inclusion
of the properties identified therein.

charged as separate substantive counts of mail or wire fraud.[19]

Hasson does not challenge the sufficiency of the evidence to demonstrate, by a preponderance of the evidence, that the $20 million was involved in, or is traceable to property involved in, the money laundering conspiracy, and we see no defect in the government's proof. The jury had before it evidence of the three wire fraud counts on which it convicted and the two mail fraud counts on which it acquitted, as well as evidence of other uses of the wires, mailings, and uses of private and commercial interstate carriers during the course of the conspiracy to commit wire and mail fraud charged in the indictment. It could reasonably conclude that these mailings and wirings were proven by a preponderance of the evidence and that they were made or caused for the purpose of executing the scheme to defraud. The jury also had before it abundant evidence of the extensive

---

[19] The jury verdict acquitting Hasson of the two mail fraud counts does not preclude a fact-finder from relying on the evidence introduced in support of those counts for other purposes. As the Court noted in United States v. Watts, there is no constitutional prohibition against relitigating acquitted conduct in a later proceeding governed by a lower standard of proof, 519 U.S. 148, 156, 117 S.Ct. 633, 637 (1997) (per curiam) (citing Dowling v. United States, 493 U.S. 342, 349, 110 S.Ct. 668, 672 (1990)), and it is well-established that sentencing courts may consider both uncharged and acquitted conduct in determining the appropriate sentence. Id. at 152-53, 117 S.Ct. at 635-36. We do not mean to imply that a court could impose a forfeiture order based on a money laundering offense with which the defendant was not charged or for which he was acquitted. See 18 U.S.C. § 982(a)(1) (requiring forfeiture of property involved in or traceable to a convicted offense). Similarly, a court could not order restitution based on an uncharged or acquitted offense. See 18 U.S.C. §§ 3663A, 3663 (providing restitution to victims of a convicted offense for losses caused by that offense). But, money laundering conviction in hand, the government need only prove that property was involved in or traceable to property involved in that offense by a preponderance of the evidence.

29

scheme to defraud furthered by these various mailings and uses of the wires.

In sum, Hasson's contention that only $877,500 was demonstrated to be proceeds of mail and wire fraud is incorrect and, because he advances no other argument in support of his Excessive Fines Clause challenge, we reject that challenge.

2. Restitution Order

Hasson's Excessive Fines Clause challenge to the restitution order is identical to his challenge to the forfeiture order -- that the order is excessive in light of the fact that the substantive wire fraud counts for which he was convicted involved only $877,500. Again, this argument is made with the apparent understanding that the losses caused to victims of the wire fraud and conspiracy to commit wire fraud must be demonstrated beyond a reasonable doubt and that only the $877,500 involved in the three wire fraud counts were proven under this standard. The amount of the losses caused to the victims of Hasson's wire fraud and conspiracy to commit wire fraud was proved at sentencing by a preponderance of the evidence. See 18 U.S.C. § 3664(e). Hasson does not challenge the trial court's factual findings with respect to the losses suffered by the victims under this standard of proof. Finding no other argument offered in support of his Excessive Fines Clause challenge, we reject it.

30

## III. CONCLUSION

There is sufficient evidence in the record to support the convictions for wire fraud, conspiracy to commit wire fraud, and conspiracy to launder money. The sentencing court did not commit plain error in the restitution order, and the orders of restitution and forfeiture are properly founded on facts proven with sufficient evidence under a preponderance of the evidence standard. In light of the foregoing discussion, Hasson's convictions, restitution and forfeiture orders are

**AFFIRMED**.