[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-10685
Non-Argument Calendar
_____

D.C. Docket No. 5:11-cr-00050-MTT-CHW-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHERRY DARLENE MCDANIEL,
a.k.a. Darlene McDaniel,
LANCE MCDANIEL,

Defendants-Appellants.


_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(January 8, 2013)

Before DUBINA, Chief Judge, WILSON and ANDERSON, Circuit Judges.

PER CURIAM:

Appellants Sherry "Darlene" McDaniel and Lance McDaniel (the "defendants") appeal their convictions and sentences for conspiracy to commit theft from an organization receiving federal funds, in violation of 18 U.S.C. § 371 and in connection with 18 U.S.C. § 666(a)(1)(A).  The indictment charged that Darlene, as Executive Director ("ED") of the Thomaston Housing Authority ("THA"), conspired with her husband Lance to honor a previous ED's contracts between the THA and Steve Williams Painting ("SWP").  SWP was a "subterfuge" for Lance's painting company, and Lance received payment from the SWP contracts.  These actions violated a conflict-of-interest provision located in the THA's annual contract with the U.S. Department of Housing and Urban Development ("HUD") that provided that no officer of the THA Board could enter into a contract in which any member of the officer's immediate family had an interest.  The evidence at trial showed that Lance and Darlene collaborated and agreed to create and maintain contracts with SWP in order to hide the fact that Lance was actually contracting with the THA, in violation of the relevant conflict-of-interest provision.  At trial, the government also introduced evidence that some of the contracts between the THA and SWP were forged after the previous ED's death and violated a separate, more restrictive conflict-of-interest provision

2

enacted by the THA itself.

On appeal, the defendants each argue that: (1) there was a constructive amendment of the indictment because the indictment charged Lance and Darlene with conspiring to have the THA honor the previous ED's pre-existing contracts, in contravention of the HUD conflict-of-interest provision, while the trial evidence showed that the contracts at issue were forgeries created after the prior ED's death and which violated the THA's conflict-of-interest provision, not HUD's provision, as charged; (2) the indictment was fatally deficient because the conspiracy count omitted the specific-intent elements of the underlying object offenses in the conspiracy count; (3) the evidence was insufficient to support the defendants' conspiracy convictions; (4) the defendants' sentences were procedurally unreasonable because the district court used the face amounts of the contracts between the THA and SWP to establish the loss amount under the Sentencing Guidelines; and (5) the district court erred by denying the defendants' motion for a new trial because a juror's post-verdict statement that it was a waste of time to sit for a six-day trial when Lance and Darlene had been indicted by the federal government showed that the juror committed misconduct during *voir dire* by indicating that the indictment would not affect the juror's opinion of innocence or guilt.

3

After reviewing the record and reading the parties' briefs, we affirm the defendants' convictions and sentences.

I.

We review questions of constitutional law and denials of motions for judgment of acquittal *de novo*. *United States v. Ward*, 486 F.3d 1212, 1220-21 (11th Cir. 2007). A defendant cannot be tried on charges that are not made against him in the indictment, and when evidence at trial deviates from what is alleged in the indictment, either a constructive amendment or a variance can arise. *United States v. Flynt*, 15 F.3d 1002, 1005 (11th Cir. 1994).

The concepts of constructive amendment and variance are "oft-confused." *United States v. Narog*, 372 F.3d 1243, 1247 (11th Cir. 2004). A constructive amendment occurs "when the essential elements of the offense contained in the indictment are altered to broaden the possible bases for conviction beyond what is contained in the indictment." *Id.* (quoting *United States v. Keller*, 916 F.2d 628, 634 (11th Cir. 1990)). In other words, jury instructions cannot allow a conviction on broader grounds than those alleged in the indictment. *Id.* at 1248. "The danger that we are concerned with is that a defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Behety*, 32 F.3d 503, 509 (11th Cir. 1994) (internal quotation marks omitted). The indictment

4

can be expanded literally or in effect, by the prosecutor's actions or the court's instructions. *Id.* at 508-09. A constructive amendment "is *per se* reversible error." *Narog*, 372 F.3d at 1247.

On the other hand, a "variance occurs when the facts proved at trial deviate from the facts contained in the indictment but the essential elements of the offense are the same." *Id.* (quoting *Keller*, 916 F.2d at 634). The allegations in the indictment and proof at trial must correspond so that the defendant may present a defense and so that the defendant is protected against a subsequent prosecution for the same offense. *United States v. Reed*, 887 F.2d 1398, 1403 (11th Cir. 1989). Unlike a constructive amendment, a variance requires reversal only when the defendant can establish that his rights were substantially prejudiced. *Narog*, 372 F.3d at 1247.

The difference between the two concepts is illustrated in *Narog*. The defendants in *Narog* appealed their convictions of possession of pseudoephedrine with the intent to manufacture a controlled substance, where the indictment specifically charged the defendants with the intent to manufacture methamphetamine. *Narog*, 372 F.3d at 1244, 1246. The government put on evidence that showed that the defendants intended to manufacture methamphetamine. *Id.* at 1246. In response to a jury question, the court instructed

5

that the government only had to prove that the defendants intended to manufacture a controlled substance, not that they intended to manufacture methamphetamine specifically. *Id.* at 1246-47. We held that this was not a variance issue because "[t]he facts proved at trial did not deviate from the facts alleged in the indictment." *Id.* at 1247. This was, however, a constructive amendment because the government had charged a subset of the statutory crime, methamphetamine, and the court's response to the jury question broadened the crimes charged in the indictment to include all controlled substances. *Id.* at 1249.

"The elements of a conspiracy under 18 U.S.C. § 371 are (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). Section 666(a)(1)(A) of Title 18 of the U.S. Code makes it illegal to steal from an organization receiving federal funds. *See* 18 U.S.C. § 666(a)(1)(A). Section 641 of Title 18 of the U.S. Code makes it illegal to steal money from the United States. *See* 18 U.S.C. § 641.

We do not consider arguments raised for the first time in a reply brief. *United States v. Martinez*, 83 F.3d 371, 377 n.6 (11th Cir. 1996).

First, because Darlene briefly mentions in her reply brief that a variance

6

occurred, we will not consider this argument. *See id.* Second, Lance and Darlene have not shown that there was a constructive amendment of the indictment because the trial evidence showing that the SWP contracts were entered into after a prior ED's death was not inconsistent with the indictment's allegation that such contracts were entered into to hide the fact that Lance and Darlene had essentially contracted the work to Lance's company. Further, the evidence showed that Lance and Darlene violated the HUD conflict-of-interest provision listed in the indictment.

## II.

"Whether an indictment sufficiently alleges a statutorily proscribed offense is a question of law that we review *de novo*." *United States v. Steele*, 178 F.3d 1230, 1233 (11th Cir. 1999). "An indictment is sufficient if it: (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense." *Id.* at 1233-34 (internal quotation marks omitted). "[I]f a general description of the offense is given then it is also necessary to allege facts and circumstances which will inform the defendant of the specific offense with which he is being charged." *Id.* at 1234 (quoting *Belt v. United States*, 868 F.2d

7

1208, 1211 (11th Cir. 1989)).  As noted above, "[t]he elements of a conspiracy under § 371 are (1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *Hasson*, 333 F.3d at 1270.

Darlene relies on *United States v. Fischetti*, 450 F.2d 34 (5th Cir. 1971).[1] The defendants in *Fischetti* were convicted on two counts of violating 29 U.S.C. § 186(b)(1), a labor relations provision, and one count of conspiracy to violate § 186. *Fischetti*, 450 F.2d at 37.  The former Fifth Circuit affirmed the conspiracy conviction and reversed the convictions on the substantive counts.  *Id.*  The defendants challenged the conspiracy count on appeal because it made reference only to the number of the statute the defendants were alleged to have conspired to violate.  *Id.* at 40.  The defendants argued that, because § 186 contained several prohibitions, they should have been apprised of exactly which provision of the statute they were charged with conspiring to violate.  *Id.*  Because defendants had not preserved the issue at trial, and it was not a jurisdictional defect, the former

---

[1]In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to October 1, 1981.

8

Fifth Circuit did not decide this issue. *Id.* The defendants also contended that the conspiracy count alleged the object of the conspiracy in the same language that was used in the substantive counts, and, because the latter were defective because of an omitted essential element of willfulness, the conspiracy count was likewise defective. *Id.* The former Fifth Circuit held that this argument was without merit, and stated that "[i]n a conspiracy count the conspiracy is the gist of the offense," and that the object of the conspiracy does not need to be described in the same detail as would an indictment for the substantive offense itself. *Id.* "Every element of the substantive offense need not be alleged within the conspiracy count." *Id.*

We conclude from the record that the district court did not err in refusing to dismiss the indictment because it correctly provided all of the essential elements of the conspiracy offense, and the indictment was not required to list the essential elements of the substantive offenses that were the objects of the conspiracy.

### III.

Again, we review the sufficiency of the evidence to support a conviction *de novo*. *Hasson*, 333 F.3d at 1270. "The record is viewed in the light most favorable to the verdict, drawing all reasonable inferences and resolving all questions of credibility in favor of the government." *Id.* We will affirm the

verdict "if a reasonable juror could conclude that the evidence establishes guilt beyond a reasonable doubt." *Id.*

As noted above, the elements of a conspiracy under 18 U.S.C. § 371 are (1) an agreement among two or more people to achieve an unlawful objective, (2) knowing and voluntary participation in the agreement, and (3) an overt act by a conspirator in furtherance of the agreement. *Id.* In order to convict someone of fraudulently obtaining or misapplying funds from an organization receiving federal assistance, the government must prove: (1) the defendant converted property owned by, or under the care, custody, or control of an organization receiving federal assistance; (2) the defendant was an agent of such an organization; (3) that property was valued at $5,000 or more; and (4) the organization received in excess of $10,000 in federal funds during the 1-year period in which the defendant converted the property. 18 U.S.C. § 666(a)(1)(A); *see United States v. Tampas*, 493 F.3d 1291, 1298 (11th Cir. 2007) (holding that an embezzlement conviction under § 666 requires proof of conversion of property valued at greater than $5,000 from an organization that receives more than $10,000 in federal funds each year).

We conclude from the record that the evidence was sufficient for a reasonable jury to conclude that Lance and Darlene were knowing participants in

10

the conspiracy.  The evidence showed that Lance (1) entered into an agreement with Darlene to steal from the THA, in violation of § 666(a)(1)(A); (2) received money from the checks written to SWP; and (3) urged the "owner" of SWP not to disclose the true nature of the SWP painting contracts.  The evidence showed that Darlene (1) was the ED of the THA at the time of the charged conspiracy; (2) entered into an agreement with Lance to steal from the THA, in violation of § 666(a)(1)(A); and (3) as ED, requested that the THA Board honor its pre-existing contracts with SWP, despite knowing that doing so would violate the relevant conflict-of-interest provision.

## IV.

We review the district court's amount-of-loss determination for clear error. *United States v. Renick*, 273 F.3d 1009, 1025 (11th Cir. 2001).  Section 2B1.1(b)(1) of the Sentencing Guidelines provides for a sentencing enhancement based on the amount of loss caused by the defendant's offense.  U.S.S.G. § 2B1.1(b)(1).  This section indicates that a defendant's offense level should be increased by 12 if the offense involved a loss amount of more than $200,000 but not more than $400,000.  U.S.S.G. § 2B1.1(b)(1)(G).  "When calculating loss for sentencing purposes, the district court looks to the greater of actual loss or intended loss." *United States v. Willis*, 560 F.3d 1246, 1250 (11th Cir. 2009)

11

(internal quotation marks omitted).  Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense," and intended loss is "the pecuniary harm that was intended to result from the offense."  U.S.S.G. § 2B1.1, comment. (n.3(A)(i) and (ii)).

The Guidelines do not require a precise determination of loss, and a court need only make a reasonable estimate of the loss, given the available information. *Renick*, 273 F.3d at 1025.  Upon challenge, however, the government bears the burden of supporting its loss calculation with "reliable and specific evidence."  *Id.* (citation omitted).  The district court should make a reasonable estimate of the loss amount, which cannot be mere speculation, but is not required to be completely precise.  *United States v. Walker*, 490 F.3d 1282, 1300 (11th Cir. 2007).  Loss can be estimated based on the fair market value of the stolen property, or, "if the fair market value is impracticable to determine or inadequately measures the harm, the cost to the victim of replacing that property."  U.S.S.G. § 2B1.1, comment. (n.3(C)(i)); *United States v. Cannon*, 41 F.3d 1462, 1467 (11th Cir. 1995) (affirming the district court's use of the contract value as the amount of loss in a conspiracy to defraud the government under previous § 2B1.1, which provided for a similar valuation of loss).  We have recognized that "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that

12

evidence," and, thus, "the sentencing judge's determination of loss is entitled to appropriate deference." *Willis*, 560 F.3d at 1251 (internal quotation marks omitted).

We conclude from the record that the district court did not clearly err by establishing the loss amount based on the gain to Lance and Darlene, measured by the face value of the contracts to SWP, where the loss was difficult to calculate in the absence of an honest and open bidding process.

V.

We review a district court's decision to grant or deny a new trial or an evidentiary hearing for an abuse of discretion. *United States v. Quilca-Carpio*, 118 F.3d 719, 722 (11th Cir. 1997). "Investigation of alleged juror misconduct is committed to the discretion of the district court and is reviewed only for an abuse of that discretion." *United States v. Carpa*, 271 F.3d 962, 967 (11th Cir. 2011) (internal quotation marks omitted). "A court enjoys substantial discretion in choosing the investigative procedure to be used in checking for juror misconduct." *Id.* (internal quotation marks omitted).

Because a "litigant is entitled to a fair trial, but not a perfect one," courts should "ignore errors that do not affect the essential fairness of the trial." *Id.* at 966 (internal quotation marks omitted). *Voir dire* protects "the right to a jury

13

capable and willing to decide the case solely on the evidence before it," and, thus, errors during *voir dire* can warrant a new trial. *Id.* "To invalidate the result of a long and burdensome trial because of a juror's mistaken, though honest, response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." *Id.* at 966-67 (internal quotation marks omitted). A party challenging her trial must show, first, that a juror's answer to a material question on *voir dire* was dishonest, and second, that an honest answer would have provided a valid basis for a challenge for cause. *Id.* at 967. There must be a showing of bias that would disqualify a juror, which can be shown by express admission or proof of specific facts showing such a close connection to the case at hand that bias is presumed. *Id.* "A juror's dishonesty is a strong indication of bias." *Id.*

We conclude that the district court did not err by denying Lance and Darlene's motion for a new trial because there was no evidence that a juror committed misconduct during *voir dire* by denying that the indictment affected the juror's opinion of Lance and Darlene's innocence or guilt.

For the aforementioned reasons, we affirm the defendants' convictions and sentences.

**AFFIRMED.**

14