[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-11969

_____

D.C. Docket No. 2:13-cr-00045-RWS-JCF-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

STANLEY J. KOWALEWSKI,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(September 6, 2017)

Before TJOFLAT and JORDAN, Circuit Judges, and HUCK,[*] District Judge.

PER CURIAM:

---

[*] The Honorable Paul C. Huck, United States District Judge for the Southern District of Florida, sitting by designation.

Stanley J. Kowalewski was the owner and CEO of SJK Investment Management, Inc., a hedge fund of funds manager. In 2009, Mr. Kowalewski formed a new SJK fund called the Special Opportunities Fund, which he did not disclose to investors. He diverted more than $16 million into the SOF without the investors' knowledge and used that money to make a number of personal purchases and to transfer over $4 million into his personal bank account.

A federal grand jury charged Mr. Kowalewski with 22 counts of wire fraud, in violation of 18 U.S.C. §§ 1343 & 2, based on his alleged diversion of funds and misrepresentations to investors; one count of conspiracy to obstruct a Securities and Exchange Commission proceeding, in violation of 18 U.S.C. § 371; and one count of obstruction of an SEC proceeding, in violation of 18 U.S.C. §§ 1505 & 2, based on false testimony and altered documentation that he provided to the SEC during its investigation of SJK. Following a trial, a jury found Mr. Kowalewski guilty on all counts and the district court sentenced him to 209 months' imprisonment.

Mr. Kowalewski argues on appeal that the government presented insufficient evidence to sustain his convictions for wire fraud, conspiracy to obstruct, and obstruction. We address each conviction in turn.

"On review, we must affirm if the evidence and the inferences it supports, viewed in the light most favorable to the government, would permit a reasonable

2

trier of fact to establish guilt beyond a reasonable doubt." *United States v. Harrell*, 737 F.2d 971, 979 (11th Cir. 1984). We consider the evidence "with all inferences and credibility choices drawn in the government's favor," and we "are bound by the jury's credibility choices, and by its rejection of the inferences raised by the defendant." *United States v. Broughton*, 689 F.3d 1260, 1276–77 (11th Cir. 2012) (citation omitted). In doing so, we do not ask whether *we* believe "that the evidence at the trial established guilt beyond a reasonable doubt"—rather, the "relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979) (emphasis in original). The "evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except that of guilt." *Harrell*, 737 F.2d at 979.

To establish wire fraud under 18 U.S.C. § 1343 the government must prove "(1) intentional participation in a scheme to defraud and (2) use of the interstate wires in furtherance of the scheme." *United States v. Hasson*, 333 F.3d 1264, 1270 (11th Cir. 2003). Mr. Kowalewski argues that the government did not present sufficient evidence to demonstrate intent to defraud, but we disagree.

Intent to defraud may be established by circumstantial evidence, *see United States v. Jennings*, 599 F.3d 1241, 1250 (11th Cir. 2010), and the government

3

presented sufficient circumstantial evidence from which a reasonable jury could find the requisite intent to convict Mr. Kowalewski of wire fraud. For example, the government presented evidence that Mr. Kowalewski provided investors with monthly statements that misrepresented their account balances through inflated valuations (up to $20 million more than the actual value of the accounts) and sent letters to them that misrepresented how their money was invested and what had driven performance for the month. Mr. Kowalewski also misrepresented to investors that he was managing more than $400 million in assets, when he never had more than approximately $71 million under management. The government presented further evidence that Mr. Kowalewski told investors that he used equity investment strategies that did not include real estate investments, yet he purchased a personal home, two homes for relatives, and a beach house with investor funds. Similarly, he told investors that he would invest in only "unaffiliated" hedge funds, but instead diverted more than $16 million into the SOF—an "affiliated" fund— without the investors' knowledge, using that money to, among other things, buy personal homes and transfer at least $4 million to himself. Viewing this evidence and appropriate inferences in the light most favorable to the government, a reasonable jury could find that Mr. Kowalewski intended to defraud his investors.[1]

---

[1] Mr. Kowalewski argues that the language in the Private Placement Memoranda provided to the investors permitted him to change investment strategies and negated any oral representations made to investors. But, unlike in a civil fraud case, such contractual disclaimers do not preclude

4

To prove conspiracy under 18 U.S.C. § 371, the government must present evidence of "(1) an agreement among two or more persons to achieve an unlawful objective; (2) knowing and voluntary participation in the agreement; and (3) an overt act by a conspirator in furtherance of the agreement." *Hasson*, 333 F.3d at 1270. Michael Fulcher, SJK's chief financial officer, pled guilty to conspiring with Mr. Kowalewski to obstruct the SEC investigation. Mr. Fulcher testified that he, at Mr. Kowalewski's direction, created two rental agreements in November of 2010 and backdated them to July of 2010 to make it appear that Mr. Kowalewski's family members were leasing properties purchased by the SOF with investor funds when there were in fact no rental agreements. Mr. Kowalewski told the SEC that the rental agreements existed and were signed at the time the SOF purchased each property. Viewing this evidence in the light most favorable to the government, a reasonable jury could find that Mr. Fulcher and Mr. Kowalewski conspired to submit false documents to the SEC in order to obstruct its proceeding.

As for the substantive count of obstruction, the government was required to prove that Mr. Kowalewski "corruptly . . . endeavor[ed] to influence, obstruct, or impede the due and proper administration of the law" in the SEC proceeding. 18 U.S.C. § 1505. The term "corruptly" means "acting with an improper purpose,

a criminal conviction for fraud. *See United States v. Weaver*, 860 F.3d 90, 95 (2d Cir. 2017); *United States v. Lucas*, 516 F.3d 316, 339 (5th Cir. 2008); *United States v. Ghilarducci*, 480 F.3d 542, 546–47 (7th Cir. 2007). In any event, some of the misrepresentations went beyond the types of investments made.

5

personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. § 1515(b). The government presented evidence that Mr. Kowalewski and Mr. Fulcher created the back-dated rental agreements, and that Mr. Kowalewski falsely testified to the SEC that the SOF had leased the properties to him and his family members. There is also evidence that Mr. Kowalewski falsely stated during his SEC testimony that he had disclosed the SOF fund to investors, and that his attorneys and other professionals had authorized his fraudulent activity. Based on this evidence, a reasonable jury could conclude that Mr. Kowalewski had corruptly endeavored to obstruct the SEC's investigation.

In sum, the government provided sufficient evidence from which a reasonable jury could find Mr. Kowalewski guilty beyond a reasonable doubt on the wire fraud, conspiracy, and obstruction charges. Accordingly we affirm his convictions and sentence.[2]

**AFFIRMED**.

---

[2] Mr. Kowalewski also raises a number of evidentiary, procedural, and sentencing issues. Following oral argument and a review of the record, we affirm on those issues without further discussion.