[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
May 13, 2008
THOMAS K. KAHN
CLERK

_____

No. 07-11228

_____

D. C. Docket No. 05-00546-CR-T-26MSS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ALFREDO EDUARDO POLO PADRON,
a.k.a. Alberto Padron,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 13, 2008)**

Before BARKETT, FAY and STAPLETON,[*] Circuit Judges.

BARKETT, Circuit Judge:

---

[*] Honorable Walter K. Stapleton, United States Circuit Judge for the Third Circuit Court of Appeals, sitting by designation.

Alfredo Eduardo Polo Padron appeals from his conviction and 24-month sentence on one count of conspiracy to commit mail fraud in violation of 18 U.S.C. §§ 371 and 1341, and four counts of mail fraud in violation of 18 U.S.C. § 1341. A jury convicted Padron of the mail fraud based on his involvement with a personal injury clinic which obtained money from insurance companies by submitting false claims via United States mail. On appeal, Padron argues that the Government's conduct in investigating him amounted to entrapment. He also challenges three evidentiary rulings the district court made during his trial. Finally, he appeals from his sentence on grounds that the district court erred in the loss calculation and that the district court lacked statutory authority to impose a forfeiture money judgment against him. After careful review and consideration of the briefs and oral argument of counsel, we affirm Padron's conviction and sentence.

## I. FACTS

Padron was working as a janitor for the Tampa Housing Authority when he met co-defendant, and later girlfriend, Elizabeth Caruso in 1996.[1] Caruso met Michael Sperounes, a government informant in this case, while she was working in a personal injury clinic. Caruso testified at trial that she suspected that patients

---

[1] Caruso pled guilty to the counts in this indictment on June 7, 2006.

were being paid and that false insurance claims were being filed at both of the personal injury clinics where she worked in the late 1990s. Sperounes was an attorney who represented clients from one of the clinics in pursuing their personal injury claims, and he was involved in many aspects of the insurance fraud industry.

In December 1998, the FBI launched an investigation of insurance fraud involving staged and nonexistent accidents called operation "Misplaced Trust". Sperounes became a cooperating witness in 1998 after he received a grand jury subpoena for records from his law practice. With his help, the FBI created Trident Venture Group in November 1999 to infiltrate the staged accident insurance fraud network. Trident was an undercover business which posed as an advance funding company, a company which would advance money to individuals who expect to receive insurance settlements on bodily injury claims in exchange for the right to collect a greater amount of money upon settlement. Sperounes and FBI Special Agent Gricel Sass were responsible for running Trident, and they were responsible for initiating contact with people in the personal injury clinic business.

Caruso decided to open her own personal injury clinic in December 1999 or January 2000, and she discussed her plan with Padron. Caruso and Padron each invested $10,000 to open the new clinic, called the Tampa Bay Personal Injury Clinic ("TBPIC"). Caruso was TBPIC's president, and Padron served as its

3

treasurer and secretary.

In March 2000, Sperounes and Special Agent Sass met with Caruso and told her about Trident's advance funding business, but they did not tell her that it was illegal at that time.[2] Caruso subsequently told Padron about Trident and suggested that they work together. Sperounes and Sass began visiting TBPIC on a regular basis and developed strong personal relationships with Caruso and Padron. Through a series of meetings in April 2000, Trident provided advance funding for Cathy Castillo, a woman that Caruso and Padron retained to act as a staged accident victim. Trident advanced Castillo $500, Padron instructed her where to tell the insurance investigator she was sitting at the time of the accident, and TBPIC later billed Castillo's insurance company for her treatment.

In early June 2001, co-defendant Emmanuel Mellon visited TBPIC and told Caruso and Padron that he had been referred to them by Trident, and that he wanted to send "patients" to TBPIC. Sperounes met with Caruso and Padron to vouch for Mellon and confirmed that Trident had funded staged accidents for Mellon before. Caruso and Padron then agreed to work with Mellon, and Mellon eventually referred the patients who participated in the June 7 and 12, 2001

---

[2] The FBI did not initially tell clinic owners that their business was illegal, though they usually disclosed this within the first few meetings.

4

accidents that are the basis of Padron's indictment.[3]

In October 2001, the FBI ended the undercover investigation. Later that year, Caruso and Padron parted ways because of personal and business problems, and Padron bought Caruso's interest in TBPIC.

## II. PROCEDURAL HISTORY

Padron was indicted for mail fraud and went to trial with three co-defendants. He raised an entrapment defense and twice moved for a judgment of acquittal based on the argument that the Government had engaged in outrageous conduct and failed to present evidence of predisposition. The district court denied both motions, but did give the jury an entrapment instruction. The jury found Padron guilty of all counts.

After the trial, the district court entered a preliminary order of forfeiture which contained a money judgment in the amount of $89,120.19. Padron filed a renewed motion for a judgment of acquittal based on entrapment, and filed for a new trial based on several allegedly erroneous evidentiary rulings. The court denied both motions and sentenced Padron to twenty-four months in prison on each count, to be served concurrently. The court also ordered Padron to pay

---

[3] The patients from the June 7 and June 12, 2001, accidents all initially sought treatment at TBPIC, though the ones from the June 7 accident later sought treatment at another clinic as well.

$88,241.97 in restitution, and included the $89,120.19 forfeiture money judgment in the sentence. This appeal followed.

## III. STANDARDS OF REVIEW

Several standards of review apply to this appeal. First, "[w]hen an entrapment defense is rejected by the jury, [our] review is limited to . . . whether the evidence was sufficient for a reasonable jury to conclude that the defendant was predisposed to take part in the illicit transaction." United States v. Brown, 43 F.3d 618, 622 (11th Cir. 1995). "[The] jury's verdict cannot be overturned if any reasonable construction of the evidence would allow the jury to find the defendant guilty beyond a reasonable doubt." Id. Accordingly, "we must view all facts and make all inferences in favor of the government." Id. Second, we review evidentiary rulings for an abuse of discretion. United States v. Gunn, 369 F.3d 1229, 1236 (11th Cir. 2004). Third, we review the district court's finding regarding the loss amount for clear error, United States v. Patti, 337 F.3d 1317, 1323 (11th Cir. 2003), and Padron's sentence for reasonableness. Gall v. United States, 552 U.S. ___, 128 S.Ct. 586, 597 (2007); United States v. Hunt, 459 F.3d 1180, 1182 (11th Cir. 2006). Finally, we review de novo the legality of the forfeiture money judgment entered against Padron. United States v. Hasson, 333 F.3d 1264, 1275 (11th Cir. 2003).

6

## IV.  DISCUSSION

Padron first argues that the district court erred in denying his motion for judgment of acquittal based on his entrapment defense.  "A successful entrapment defense requires two elements: 1) government inducement of the crime, and 2) lack of predisposition on the part of the defendant."  Brown, 43 F.3d at 623.  "The defendant bears [the] initial burden of production to show government inducement."  Id.  The "mere suggestion of a crime or initiation of contact is not enough."  Id.  Rather, "inducement requires an element of persuasion or mild coercion."  Id.  Once the defendant has produced evidence of inducement, "the burden shifts to the government to prove beyond a reasonable doubt that the defendant was predisposed to commit the crime."  Id.

Our review of the record demonstrates that the district court did not err in concluding that Padron did not meet his burden of providing sufficient evidence of inducement to support a judgment of acquittal.  Although Padron contends that he was unfamiliar with, and unaware of, the practice of staging accidents and submitting fraudulent insurance claims when he and Caruso began operating TBPIC, Padron has provided no evidence that he experienced any degree of coercion to commit the fraud, and as we have held, the "mere suggestion of a crime or initiation of contact is not enough" to prove inducement.  See id.

The Government, in contrast, has provided ample evidence supporting a jury finding that Padron was predisposed to commit fraud. Caruso provided the most damaging evidence by testifying at trial that she and Padron had "always discussed" paying for patients before they even opened the clinic; they discussed potential patients based on people she knew from the clinic where she worked before opening TBPIC and people he knew from the Tampa Housing Authority; they staged their first accident before they met with anyone from Trident; they had intended to engage in unlawful activity prior to meeting Sperounes and Agent Sass; and that they were "trying not to get caught." This testimony is more than sufficient evidence to support a reasonable jury's finding that Padron was predisposed to commit insurance fraud. Therefore, the district court did not err in denying Padron's motion for a judgment of acquittal.

Padron next argues that the district court erred by admitting 1) evidence concerning Castillo's uncharged staged accident on April 7, 2000; 2) demand letters from attorneys concerning bodily injury claims submitted to insurance companies on behalf of Padron's patients; and 3) police reports concerning the charged staged accidents on June 7 and 12, 2001. Each of Padron's arguments fail. First, the evidence related to Castillo's staged accident on April 7, 2000, was properly admitted under Federal Rule of Evidence 404(b) to show motive, plan,

and intent. Though there was a minor error on the 404(b) notice which listed the accident as occurring on April 4 rather than April 7, Padron was provided with the necessary pretrial discovery and had sufficient notice that the Government intended to use this evidence at trial. Moreover, any prejudicial effect of admitting evidence related to the April 7 accident was cured by the district court's limiting instructions. Second, though we agree with Padron that the attorney letters were wrongly admitted, Padron has not demonstrated that he was prejudiced by this error.[4] Padron's conclusory statement that this evidence indicated to the jury that any purported conspiracy was larger and more complicated than necessary is insufficient to show prejudice. Third, the district court did not err in admitting the police reports that Mellon submitted to Trident to secure the advance funding for the accidents on June 7 and 12, 2001.[5] The police reports were not hearsay because they were admitted to demonstrate that a co-conspirator was seeking to

---

[4] Padron argues that the Government did not prove that Padron or any of his co-conspirators had actually hired the attorneys who wrote the demand letters. The Government argues that they were relevant to show that Padron was aware that lawyers were used to settle fraudulent bodily injury claims and that the intended loss included bodily injury claims submitted by the lawyers. We agree with Padron that the attorney letters were not relevant to the mail fraud charge and should have been excluded. However, we find that any error was harmless. Moreover, we reject Padron's argument that the admission of the attorney letters violates his Sixth Amendment rights under Crawford v. Washington, 541 U.S. 36 (2004) because the letters are not testimonial evidence. See United States v. Brown, 441 F.3d 1330, 1359 (11th Cir. 2006) ("The Crawford rule applies only to testimonial evidence.").

[5] Trident would not advance funding to bodily injury claimants unless a copy of the police report of the incident was submitted to them. Thus, Mellon submitted the police reports regarding the June 7 and June 12, 2001 accidents to Trident.

9

secure advance funding, not for the truth of the matter asserted within the police reports. The district court committed no reversible error in admitting the three challenged categories of evidence.

Padron also contends that this case should be remanded for resentencing because the district court improperly calculated the loss amount. In the case of jointly undertaken criminal activity, a defendant is held accountable for all criminal acts which are: (a) "in furtherance of the jointly undertaken criminal activity;" and (b) reasonably foreseeable in connection with that criminal activity. U.S.S.G. § 1B1.3(a)(1); see also id., cmt. 2. In sentencing Padron, we cannot say that the district court clearly erred in holding him accountable for the full intended loss amount because it was reasonably foreseeable that, as a result of the staged accidents underlying his conspiracy charge, the "patients" would seek treatment at other clinics and demand letters would be submitted by personal injury attorneys. We also find no error in the district court's conclusion that Padron should be held liable for the full amount TBPIC billed to the insurance companies, irrespective of deductibles and policy limits. See United States v. Grant, 431 F.3d 760, 765 n.6 (11th Cir. 2005) (where a defendant attempts to cash a stolen check, the district court may calculate the intended loss as the full value of the check, regardless of the fact that the account contained less than the check's full value).

10

Finally, Padron argues that the district court lacked statutory authority to enter a forfeiture money judgment in this case.  This Circuit has not yet considered whether 28 U.S.C. § 2461(c) authorizes criminal forfeiture of specified property in general mail fraud cases, but numerous other courts, including several of our sister circuits, have held that it does.  See, e.g., United States v. Misla-Aldarondo, 478 F.3d 52 (1st Cir. 2007); United States v. Vampire Nation, 451 F.3d 189 (3d Cir. 2006); and United States v. Baker, 227 F.3d 955 (7th Cir. 2000).  We agree.

Congress enacted 28 U.S.C. § 2461(c), effective August 23, 2000, to make criminal forfeiture available in every case that the criminal forfeiture statute does not reach but for which civil forfeiture is legally authorized.  United States v. Edelkind, 467 F.3d 791, 798–800 (1st Cir. 2006).  The civil forfeiture statute applicable in this case is 18 U.S.C. § 981 which permits the government to seek civil forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title)."  18 U.S.C. § 981(a)(1)(C).  General mail fraud is included in § 1956(c)(7)'s definition of "specified unlawful activity."  18 U.S.C. § 1956(c)(7).  Thus, since civil forfeiture is legally authorized by 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c) makes

11

criminal forfeiture available for general mail fraud as well.[6]

Padron argues that because the forfeiture statutes applicable in this case do not contain provisions expressly authorizing the entry of forfeiture of <u>money</u> judgments, the district court exceeded his statutory authority. It is clear, however, that 28 U.S.C. § 2461(c) authorizes the government to seek forfeiture of specified property "in accordance with the Federal Rules of Civil Procedure" and it is equally clear that the federal rules explicitly contemplate the entry of money judgments in criminal forfeiture cases. <u>See</u> Fed. R. Crim. P. 32.2. Therefore, the district court did not err in entering a forfeiture money judgment against Padron.

**AFFIRMED.**

---

[6] Padron also argues that because civil forfeiture procedures are against specific property <u>in rem</u>, money judgments are not available in the civil forfeiture context. This argument misses the point because 28 U.S.C. § 2461(c) makes criminal remedies available in the civil context, and Padron concedes that criminal forfeiture proceedings are <u>in personam</u>. <u>See</u> <u>United States v. Conner</u>, 752 F.2d 566, 576 (11th Cir. 1985) (upholding forfeiture money judgment in the RICO context on the ground that because criminal forfeitures are <u>in personam</u>, the government need not trace the forfeited property to the underlying offense).