[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCT 7, 2008
THOMAS K. KAHN
CLERK

No. 08-10980
Non-Argument Calendar

_____

D. C. Docket No. 06-00273-CR-A-N

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

AUBREY GOODWIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(October 7, 2008)**

Before CARNES, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Aubrey Goodwin appeals his conviction and 97-month sentence for

distribution of cocaine base, commonly known as crack cocaine. Goodwin asserts that the district court violated Rule 404(b) of the Federal Rules of Evidence by permitting a government witness to testify regarding an unindicted occasion when Goodwin distributed crack cocaine and marijuana. Goodwin also contests the sufficiency of the evidence for his conviction and the reasonableness of the district court's sentence. We affirm the district court in all respects.

## I. BACKGROUND

Goodwin was indicted in the Middle District of Alabama on two counts of distributing five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). The indictment stated that Goodwin distributed 22.9 grams of crack cocaine on May 21, 2003, and 47.7 grams of crack cocaine on June 11, 2003.

Prior to trial, Goodwin moved to prevent informant Claude Russaw from testifying that he observed Goodwin sell an ounce of crack cocaine and an unknown quantity of marijuana several weeks prior to the events in the indictment. Goodwin argued that this evidence of uncharged criminal activity would poison the jury's view of his character. The government replied that the earlier drug sale established a relationship between Goodwin and Russaw and explained why Russaw sought to buy drugs from Goodwin. The district court denied Goodwin's motion, finding that testimony regarding Goodwin's unindicted distribution of

2

crack cocaine and marijuana was inextricably intertwined with the charged offenses and vital to understanding the context of the government's case, as it explained why Goodwin was the target of the investigation and how he came to know the confidential informant. The district court agreed to give a limiting instruction to the jury regarding this evidence.

The evidence at trial included the following: Russaw, the confidential informant, testified that he, from time to time, provided Officer Hubbard with information on drug dealers, and that Officer Hubbard and the district attorney's office paid Russaw to make controlled purchases. Following the district court's limiting instruction, Russaw testified that he first met Goodwin when he accompanied his cousin to buy crack cocaine and marijuana from Goodwin.[1] At that time, Russaw was introduced to Goodwin, who gave his cell phone number to Russaw and stated that he would sell Russaw crack cocaine in the future. Russaw

---

[1] Goodwin objected to this testimony based on his pretrial motion, and the court overruled the objection. The court then provided the following limiting instruction: "You're going to hear some testimony about something that does not have to do with either one of these charges against the defendant. I'm allowing you to hear this just as background information to make the story complete, and that's the only reason for you to consider this. I've told you earlier that the defendant is charged with two counts, one is the distribution of crack cocaine on May 21, 2003, and the other is distribution of crack cocaine on June 11, 2003. To the extent you believe any testimony that might involve the defendant in anything else other than those two occasions, if you believe that testimony you can consider it only as background information and only to the extent that it may affect your decision as to whether the Government has proven beyond a reasonable doubt the charges on wither one or both of the two counts. So you're not to consider these - the testimony about another occasion, but any other reason - the defendant is not charged with anything involving another date."

then contacted Officer Hubbard and told him that he had met an individual selling crack cocaine.

Both Officer Hubbard and Russaw testified that they met, with several other officers, at a staging area for a controlled purchase on May 21, 2003. After Officer Hubbard searched Russaw's person and car, Russaw called Goodwin and arranged for the purchase of one ounce of crack cocaine for $900. Officer Hubbard supplied Russaw with $1,000 and a transmitting device that would allow officers to listen to the controlled buy. Russaw went to the designated location; Goodwin arrived in the "blue box Chevy" which he was known to drive and Russaw testified that he successfully purchased the ounce of crack cocaine from Goodwin. Officer Hubbard was not situated so as to see the transaction, but he did see the "blue box Chevy" approach the designated location. After the transaction, Russaw gave Officer Hubbard the extra $100 and the ounce of crack cocaine. At trial, the government played a recording of Russaw's and Goodwin's conversation, and Russaw described for the jury what was being stated.

Russaw and Officer Hubbard both testified that on June 11, 2003 they met along with other officers at the controlled purchase staging area and Russaw called Goodwin and set up the purchase for two ounces of crack cocaine. After searching Russaw's person and car, Officer Hubbard gave Russaw $2,000 and the

4

transmitting device. Russaw went to the location Goodwin selected, with Officer Hubbard following and observing from a distance. Officer Hubbard and Russaw saw Goodwin arrive in a black SUV, and Russaw testified that Goodwin charged $1,700 for two ounces of crack cocaine. After the transaction, Russaw gave Officer Hubbard the two ounces of crack cocaine along with the $300 change. The government played a recording of Russaw's and Goodwin's conversation, and Russaw described for the jury what was being stated.

The government also presented the testimony of David Dubose, a narcotics investigator with the local district attorney's office, who stated that Russaw was a reliable informant with a history of providing accurate information. Dubose further testified that he participated in the June 2003 controlled purchase, listening to it over the transmitter. A DEA chemist testified that the substances purchased in the controlled buys on May 21st and June 11th were 22.9 grams of crack cocaine, and 47.7 grams of crack cocaine, respectively. Goodwin moved for judgment of acquittal on both counts, arguing that the evidence was insufficient to support a conviction because none of the law enforcement officers observed Goodwin distribute the drugs. The court denied the motion. The jury convicted Goodwin on both counts.

The presentence investigation report ("PSI") calculated Goodwin's base

offense level at 30 and his criminal history category of I, with a recommended range of 97-121 months' imprisonment.

At sentencing, Goodwin did not object to the PSI's factual basis or to its calculation of the Sentencing Guidelines range. Nonetheless, Goodwin argued that he was entitled to a lesser sentence because the Sentencing Commission's 2007 amendments to the Sentencing Guidelines, which advance a crack/powder cocaine ratio that varies (at different offense levels) between 25 to 1 and 80 to 1,[2] result in an unreasonable sentence. Specifically, Goodwin asserts that the "wildly" varying ratios are not based on reason and reflect an "unsound judgment" by the Sentencing Commission. For this reason, Goodwin maintained that the court should apply the lowest ratio of 25 to 1, rather than the 70 to 1 ratio required for a defendant with a base offense level of 30. The government responded that Goodwin was impermissibly urging the court to "assume the role of the Legislature" and had failed to establish a valid reason for departing from the Guidelines.

The district court stated that while it did not understand why the

---

[2] Prior to these amendments, the Sentencing Guidelines called for a "100-to-1 ratio" that treated every gram of crack cocaine as the equivalent of 100 grams of powder cocaine. This ratio was applied regardless of the base offense level.

Commission applied different crack/powder ratios for each offense level, it did not find that the ratios were the result of unsound judgment. The court recognized that the Guidelines were merely advisory, but found that the suggested range was reasonable and imposed a sentence of 97 months imprisonment.

Goodwin raises several issues on appeal: first, that the admission of Russaw's testimony regarding the uncharged criminal activity was unfairly prejudicial to him; second, that the evidence in the case does not support the conviction; and finally, that the district court's imposition of a sentence of 97 months - which was within the Sentencing Guidelines range - was unreasonable.

## II. DISCUSSION

### A.    *Evidence of Uncharged Criminal Activity*

"We review the district court's admission of prior crimes or bad acts under [Rule 404(b)] for abuse of discretion." United States v. Ramirez, 426 F.3d 1344, 1354 (11th Cir. 2005). "An abuse of discretion arises when the district court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law, or an improper application of law to fact." United States v. Baker, 432 F.3d 1189, 1202 (11th Cir. 2005). To be admissible under Rule 404(b), evidence of prior bad acts generally must withstand a three-part test:

(1) the evidence must be relevant to an issue other than defendant's

character;
(2) the probative value must not be substantially outweighed by its undue prejudice;
(3) the government must offer sufficient proof so that the jury could find that defendant committed the act.

United States v. Ellisor, 522 F.3d 1255, 1267 (11th Cir. 2008); see also United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978) (en banc) (discussing these three prerequisites as part of a two-step test).[3] We also have held that evidence of uncharged criminal activity is intrinsic, and thus not subject to Rule 404(b), if it arose from the same transaction as the indicted crime, is necessary to complete the story of the crime, or is inextricably intertwined with the evidence required to prove the charged offense. United States v. Jiminez, 224 F.3d 1243, 1249 (11th Cir. 2000). Even if the evidence meets one of these exceptions, it may still be excluded if "its probative value 'is substantially outweighed by the danger of unfair prejudice.' " United States v. Fortenberry, 971 F.2d 717, 721 (11th Cir. 1992) (quoting Fed.R.Evid. 403).

On appeal, Goodwin does not dispute that the evidence was necessary to complete the story of the crime and was inextricably intertwined with the evidence

---

[3] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

regarding the charged offense. Rather, he contends that the evidence was wrongly admitted because its prejudicial impact substantially outweighed its probative value. We disagree. The evidence was highly probative to explain how Russaw had Goodwin's cell phone number and knew that Goodwin was selling crack cocaine. Moreover, the district court offered a limiting instruction as to the proper purpose of the admitted evidence. See United States v. Padron, 527 F.3d 1156, 1160 (11th Cir. 2008). We therefore cannot conclude that the district court abused its discretion in admitting this portion of Russaw's testimony.

### B. Sufficiency of the Evidence

We review the sufficiency of evidence supporting a conviction de novo to determine whether there was substantial evidence, viewed in the light most favorable to the government, to support the jury's guilty verdict. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Baker, 432 F.3d 1189, 1231 -1232 (11th Cir. 2005).; United States v. Toler, 144 F.3d 1423, 1426-27 (11th Cir. 1998); United States v. Malatesta, 590 F.2d 1379, 1382 (5th Cir. 1979) (en banc). The evidence at trial is sufficient to support a guilty verdict so long as a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt. Toler, 144 F.3d at 1428. In other words, a guilty verdict will not be disturbed on appeal unless no reasonable trier of fact could

have found guilt beyond a reasonable doubt on the evidence before it.  Id.

Goodwin argues that the evidence was insufficient to support his conviction because Russaw was the only person to testify that Goodwin was the individual whom Russaw called to set up the controlled buys and only Russaw definitively identified Goodwin as the seller.[4]  Viewing all the evidence in the light most favorable to the government, we conclude that the evidence was sufficient to support the jury's conviction of Goodwin.  Russaw testified that, on the dates in question, Goodwin sold him crack cocaine.  This testimony is consistent with the testimony of Officer Hubbard and the DEA lab confirmed that the substances obtained in the controlled buys were 22.9 and 47.7 grams of crack cocaine.  While Goodwin implies that Russaw's testimony is not credible, the jury is responsible for making credibility determinations and, based on the verdict, the jurors obviously found Russaw to be credible.  United States v. Ndiaye, 434 F.3d 1270, 1296 (11th Cir. 2006).  As such, there was sufficient evidence for a reasonable jury to find that Goodwin was guilty of distributing more than five grams of crack cocaine on the dates in issue.

---

[4] Goodwin asserts that Officer Hubbard's identification of Goodwin on May 21st and June 11th were not sufficient because (1) Officer Hubbard only identified the "blue box Chevy" on May 21st and (2) was 200 yards away from the controlled buy on June 11th.  Also, Officer Hubbard was unable to identify the drug dealer's voice on the recordings from the controlled buys.

## C.    Reasonableness of Sentence

Finally, we review the district court's final sentence for reasonableness under an abuse-of-discretion standard.  United States v. Pugh, 515 F.3d 1179, 1189 (11th Cir. 2008) (citing Rita v. United States, 127 S.Ct. 2456, 2465 (2007)). We must first ensure that the district court committed no significant procedural error, such as improperly calculating the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence. Gall v. U.S., 522 U.S. __, 128 S.Ct. 586, 597 (2007).  If the district court's sentencing decision is procedurally sound, we must then consider the "substantive reasonableness of the sentence imposed, under an abuse-of-discretion standard," based on the "totality of the circumstances."  Id.  "The party who challenges the sentence bears the burden of establishing that the sentence is unreasonable in the light of both th[e] record and the factors in section 3553(a)."  United States v. Thomas, 446 F.3d 1348, 1351 (11th Cir. 2006) (internal quotation omitted).

Goodwin does not claim any procedural error in the determination of his sentence;[5] accordingly, we only review the substantive reasonableness of the

---

[5] We conclude the district court's sentencing decision was procedurally sound; the district court correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the §

11

sentence. Goodwin argues that because the amended crack/powder ratio varies for no obvious reason according to the applicable offense level, the application of the Guidelines results in unreasonable sentences for crack cocaine defendants; thus, the district court should not have applied this ratio, as amended, in imposing his sentence.

We conclude that the district court did not abuse its discretion in sentencing Goodwin within the Guidelines as amended. The Supreme Court has explained that although the Sentencing Guidelines are now advisory, United States v. Booker, 543 U.S. 220, 245, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Sentencing Commission nevertheless continues to serve "a key role." Kimbrough v. United States, __ U.S. __, 128 S.Ct. 558, 574 (2007). In respect to this role, district courts must treat the Guidelines as the "starting point and the initial benchmark" in considering the appropriate sentence. Gall v. United States, __ U.S. __, 128 S.Ct. 586 (2007). In Kimbrough, the Supreme Court further explained that a district court, in imposing a reasonable sentence under the § 3553(a) factors, *may* consider the disparity between the base offense levels for crack and powder cocaine. 128 S.Ct. at 574. Although Kimbrough permits a district court to grant a downward variance based on the crack to powder cocaine

_____

3553(a) factors, and thoroughly explained its reasoning.

12

ratio disparity for different offense levels, it does not require a district court to do so.

In this case, the district court noted the disparity between the crack cocaine and powder cocaine Guidelines and rejected Goodwin's argument that the crack cocaine Guideline should not be applied. The district court then considered the § 3553(a) factors and found that a sentence within the Guideline range was reasonable and not greater than necessary to comply with the purposes of sentencing. Goodwin objected to the imposition of the Guidelines, but he presented no evidence suggesting that a 97-month sentence was substantively unreasonable under the relevant factors. We therefore conclude that the district court did not err or abuse its discretion in sentencing Goodwin within the Guidelines.

## III. CONCLUSION

For the foregoing reasons, Goodwin's conviction and sentence are **AFFIRMED.**