[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-15480
Non-Argument Calendar

_____

D.C. Docket No. 8:11-cr-00089-SDM-TGW-2

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MAURICE VERNON,
WILLIAM O. JOEL,
a.k.a. Ondra Joel,

Defendants-Appellants.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(November 21, 2014)

Before MARCUS, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

William O. Joel and Maurice Vernon appeal following their convictions for

one count of conspiracy to commit wire and mail fraud, in violation of 18 U.S.C. §

1349, two counts of mail fraud, in violation of 18 U.S.C. §§ 1341 and 2, eight counts of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2, and two counts of making a false statement in a loan application, in violation of 18 U.S.C. §§ 1014 and 2, and their forfeiture judgments of $1,618,000.  On appeal, Joel argues that: (1) his indictment should have been dismissed for a Speedy Trial Act violation; (2) the district court abused its discretion by denying his motions to sever the trial; (3) his forfeiture judgment violated the Ex Post Facto Clause; (4) the district court clearly erred in applying an organizer or leader role enhancement to his offense level; and (5) the district court erred in denying his motion for acquittal based on insufficient evidence. Vernon, for his part, argues that: (1) the district court erroneously denied his motion for acquittal based on insufficient evidence; (2) the district court abused its discretion by denying his motion to sever; and (3) the court erred by allowing the government to change its basis for his criminal forfeiture judgment after trial.  After careful review, we affirm.

We review a claim under the Speedy Trial Act de novo, while reviewing a district court's factual determinations on excludable time for clear error.  United States v. Mathurin, 690 F.3d 1236, 1239 (11th Cir. 2012).  We also review de novo a Sixth Amendment claim, United States v. Yates, 438 F.3d 1307, 1311 (11th Cir. 2006); the legality of a forfeiture order, United States v. Valladares, 544 F.3d 1257, 1270 (11th Cir. 2008); an ex post facto claim, id.; and the denial of a motion

for acquittal, United States v. Hernandez, 433 F.3d 1328, 1332 (11th Cir. 2005). We also review the sufficiency of the evidence supporting a conviction de novo. Id. However, we make all factual and credibility inferences in favor of the government. United States v. Cooper, 203 F.3d 1279, 1285 (11th Cir. 2000).

We review a district court's application of a role enhancement for clear error. United States v. Rendon, 354 F.3d 1320, 1331 (11th Cir. 2003). We review a district court's grant or denial of a continuance for abuse of discretion. United States v. Vasser, 916 F.2d 624, 627 (11th Cir. 1990). We also review the denial of a motion to sever for abuse of discretion. United States v. Chavez, 584 F.3d 1354, 1360 (11th Cir. 2009). Finally, we review limitations placed on cross-examination by the district court for abuse of discretion. United States v. Barrington, 648 F.3d 1178, 1187 (11th Cir. 2011). To show an abuse of discretion, the defendant must show specific and compelling prejudice that resulted in fundamental unfairness. United States v. Stanley, 739 F.3d 633, 651 (11th Cir.), cert. denied, Harris v. United States, 134 S.Ct. 2317 (2014). Nevertheless, an appellant abandons a claim when it is argued for the first time in a reply brief. United States v. Fiallo-Jacome, 874 F.2d 1479, 1481 (11th Cir. 1989).

First, we are unpersuaded by Joel's Speedy Trial Act argument. Under the Speedy Trial Act, a defendant's trial must commence within 70 days from the filing of his indictment or his arraignment, whichever is later. 18 U.S.C. §

3

3161(c)(1).  A delay in the trial is excludable when it results from an ends-of-justice continuance, which is granted when the ends of justice served by the continuance outweigh the best interest of the public and the defendant in a speedy trial.  Id. § 3161(h)(7)(A).

When ruling on a motion for an ends-of-justice continuance, the district court must consider whether: (1) a failure to grant a continuance would make the continuance of the proceeding impossible or result in a miscarriage of justice; (2) the case is so unusual or complex that it is unreasonable to expect adequate preparation within the 70-day period; and (3) the failure to grant a continuance would deny the defendant or the government the reasonable time necessary for effective trial preparation.  Id. § 3161(h)(7)(B).  It has broad discretion in weighing these factors.  United States v. Henry, 698 F.2d 1172, 1174 (11th Cir. 1983).  It may consider whether defense counsel has had adequate time to prepare, the number of defendants, and any scheduling conflicts.  Id.  It must place its factual findings supporting the continuance on the record before it rules on a defendant's motion to dismiss.  Zedner v. United States, 547 U.S. 489, 507 (2006).

Here, the district court did not abuse its discretion by granting three ends-of-justice continuances.  For the first two continuances, it concluded that the voluminous discovery warranted a continuance, and these conclusions were within its broad discretion.  It also acted within its broad discretion for the third

4

continuance, when it concluded that scheduling conflicts warranted a continuance. Moreover, the court did not err by placing its factual findings for the third continuance on the record after the continuance was granted. Zedner, 547 U.S. at 507. Because these continuances were valid, only 13 non-excludable days elapsed between the last arraignment and the commencement of trial. On this record, the district court did not err by denying Joel's Speedy Trial Act claim.

We also find no merit to Joel's severance claim. Typically, defendants charged with a common conspiracy should be tried together. United States v. Lopez, 649 F.3d 1222, 1234 (11th Cir. 2011). Severance may be required when: (1) the defendants rely upon mutually antagonistic defenses; (2) one defendant would exculpate the other defendant in a separate trial; (3) inculpatory evidence will be admitted against one defendant that is not admissible against the other defendant; or (4) a prejudicial spillover effect will prevent the jury from making an individualized determination as to each defendant. Chavez, 584 F.3d at 1360-61. Severance is mandated when a joint trial leads to the denial of a constitutional right or when the jury would be prevented from making a reliable judgment. United States v. Blakenship, 382 F.3d 1110, 1123 (11th Cir. 2004). Mutually antagonistic defenses are not inherently prejudicial. Id. at 1125. A defendant is not automatically prejudiced when a codefendant's defense directly inculpates him or when the jury cannot logically believe both codefendants' defenses. Id.

5

Furthermore, severance is not justified when the codefendant or his attorney acts as a de facto prosecutor.  Id. at 1126.

The confession of a non-testifying codefendant is inadmissible if it directly inculpates the defendant.  United States v. Arias, 984 F.2d 1139, 1142 (11th Cir. 1993).  Accordingly, a Confrontation Clause violation occurs when, in light of the government's whole case, a codefendant's statement compels a reasonable person to infer the defendant's guilt.  United States v. Schwartz, 541 F.3d 1331, 1351 (11th Cir. 2008).  It does not occur, though, when independent evidence is necessary to make the inferential link between the codefendant's statement and the defendant's involvement in the confessed activity.  United States v. Williamson, 339 F.3d 1295, 1303 (11th Cir. 2003).

The Confrontation Clause prohibits the introduction of testimonial hearsay against a criminal defendant unless the defendant has an opportunity to cross-examine the declarant.  United States v. Ignasiak, 667 F.3d 1217, 1230 (11th Cir. 2012).  Statements by counsel during the trial are not evidence.  United States v. Jacoby, 955 F.2d 1527, 1541 (11th Cir. 1992).

In this case, the district court did not abuse its discretion by denying Joel's motions to sever.  First, his arguments that mutually antagonistic defenses or Vernon's role as a de facto prosecutor warranted severance are incorrect because neither of these facts alone mandate severance when he presents no evidence of

6

compelling prejudice.  Blakenship, 382 F.3d at 1125-26.  Second, Leslie Nelson, a government witness, did not violate Joel's Confrontation Clause rights by recounting Vernon's statement that fraudulent settlement statements were made at Investor's Outlet, the company that Joel owns.  Although the testimony mentioned his business, independent testimony was necessary for the jury to connect that statement to Joel's involvement in the scheme.  Finally, the government did not violate Joel's Confrontation Clause rights by referencing false invoices not admitted into evidence because the Confrontation Clause only limits the introduction of testimonial hearsay evidence, and an attorney's arguments are not evidence.  Because no constitutional error occurred and Joel suffered no compelling prejudice from the joint trial, the district court did not abuse its discretion by denying his motions to sever.

Next, we reject Joel's Ex Post Facto argument.  A law violates the Ex Post Facto Clause if it retroactively alters the definition of a crime or increases the punishment for a criminal act.  United States v. Saucedo-Patino, 358 F.3d 790, 793 (11th Cir. 2004).  A forfeiture order does not violate the Ex Post Facto Clause when the offense occurs after the passage of the statute authorizing forfeiture.  Valladares, 544 F.3d at 1271.

Criminal forfeiture is authorized in every case where civil forfeiture is authorized.  28 U.S.C. § 2461(c); United States v. Padron, 527 F.3d 1156, 1161-62

(11th Cir. 2008).   Civil forfeiture and criminal forfeiture are authorized for proceeds traceable to general mail fraud and wire fraud.   See 18 U.S.C. §§ 981(a)(1)(c), 1956(c)(7)(A), & 1961(1)(B); Padron, 527 F.3d at 1161.

Joel's forfeiture order was not an ex post facto violation.  He correctly notes that 18 U.S.C. § 982(a)(2) did not authorize criminal forfeiture for mail and wire fraud against mortgage lending businesses in 2006 because they were not considered "financial institutions" under then-existing law.  See 18 U.S.C. § 20 (2006).   However, criminal forfeiture was authorized for those crimes by 2006 under 28 U.S.C. § 2461(c).   See Padron, 527 F.3d at 1161.   Therefore, forfeiture was authorized when his offenses occurred, and the forfeiture judgment did not violate the Ex Post Facto Clause.  Valladares, 544 F.3d at 1271.

We also reject Joel's sentencing claim.  The Sentencing Guidelines provide for a four-level enhancement when the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.  U.S.S.G. § 3B1.1(a).  A criminal activity may be extensive if it used the services of several unknowing outsiders.  Id. § 3B1.1, comment. (n.3).   When determining whether the criminal activity was "otherwise extensive," the district court considers the length of the activity, the scope of the activity, and the number of persons involved.  United States v. Holland, 22 F.3d 1040, 1046 (11th Cir. 1994).   It may rely on evidence heard during trial, undisputed statements in the

8

presentence report, or evidence presented at the sentencing hearing to support its factual findings.  United States v. Hamaker, 455 F.3d 1316, 1338 (11th Cir. 2006).

Here, the district court did not clearly err in concluding that the scheme Joel participated in was otherwise extensive.  Its conclusions that the scheme involved numerous unknowing parties and over $1.8 million in loans were supported by the presentence report and testimony it heard during the trial.   As for Joel's argument that he was not an organizer or leader of the scheme, we do not consider it since he first raised it in his reply brief.

Nor are we persuaded by Joel's or Vernon's insufficiency of the evidence arguments.  Evidence is sufficient to support a conviction if a reasonable trier of fact, choosing among reasonable interpretations of the evidence, could find guilt beyond a reasonable doubt.  United States v. Diaz-Boyzo, 432 F.3d 1264, 1269 (11th Cir. 2005).   The evidence does not have to exclude every reasonable hypothesis of innocence.  Hernandez, 433 F.3d at 1334-35.  The jury may choose between reasonable constructions of the evidence, and it is free to disbelieve the testimony of witnesses.  Id. at 1334.

To commit wire fraud or mail fraud, a defendant must (1) intentionally participate in a scheme to defraud and (2) use or cause the use of the wires or mail for the purpose of executing the scheme.  United States v. Ward, 486 F.3d 1212, 1222 (11th Cir. 2007).  A defendant's intent to defraud may be inferred from his

conduct. United States v. Maxwell, 579 F.3d 1282, 1301 (11th Cir. 2009). His profits from a fraud are circumstantial evidence of his intent to participate in the fraud. United States v. Naranjo, 634 F.3d 1198, 1207 (11th Cir. 2011). To prove a scheme to defraud, the government must provide proof of a material misrepresentation that has a natural tendency to influence a person of ordinary prudence or is capable of influencing a person of ordinary prudence. United States v. Hasson, 333 F.3d 1264, 1270-71 (11th Cir. 2003).

To commit a conspiracy offense under 18 U.S.C. § 1349, a defendant must knowingly and willfully join an unlawful scheme to defraud. Maxwell, 579 F.3d at 1299. The government may prove the defendant's knowledge of the scheme through circumstantial evidence. Id. To prove a defendant made a false statement in a loan application, the government must show that (1) the defendant knowingly made a false statement or report and (2) he did so to influence the conduct of a federally-insured bank. United States v. Hill, 643 F.3d 807, 857 (11th Cir. 2011).

A defendant who aids or abets the party that commits an offense is punishable as a principal. 18 U.S.C. § 2(a). To prove a defendant aided and abetted an offense, the government must demonstrate that: (1) he associated himself with the criminal venture; (2) he participated in the venture as something he wished to bring about; and (3) he sought by his actions to make the venture succeed. United States v. Iglesias, 915 F.2d 1524, 1528 (11th Cir. 1990).

On this record, the government provided sufficient evidence for a reasonable jury to conclude that Joel knowingly joined the conspiracy and intentionally participated in a scheme to defraud mortgage lenders.  The evidence shows that he told Elton Lassiter, a co-conspirator, that he intended to purchase houses, inflate the price of the house, and sell them to buyers at the inflated price.   He also told Lassiter to falsely declare in loan applications that the houses would be primary residences.  He assured Jill Jackson, another co-conspirator, that it was okay to make these false declarations.  Furthermore, his company received $241,794.16 in payoffs from the sale of the houses in the scheme, which provides evidence that he intended to participate in the fraud.  Naranjo, 634 F.3d at 1207.

The government also provided sufficient evidence that material misstatements were made to mortgage lenders.  One witness testified that Jackson's false primary residence declarations qualified her for a lower interest rate and one hundred percent financing.  Furthermore, lenders relied on falsified income and liability declarations when approving the loans.  A reasonable jury could have concluded that these statements were capable of influencing the mortgage lenders.  Hasson, 333 F.3d at 1271.

The government also provided sufficient evidence of Vernon's intent to participate in the scheme to defraud for the counts of conspiracy, mail fraud, and wire fraud.  He asked Jackson whether Investor's Outlet could use her credit score

11

to invest in houses.  He asked for her financial information and helped her fill out a loan application.   He later admitted that he knew Lassiter falsified information on loan applications and that two settlement statements were created for each purchase so that the lender did not know the price stated in the original purchase agreement.    Moreover, the government's evidence indicates that he received $114,211.33 from the loan proceeds.

The government further produced enough evidence for a reasonable jury to conclude that Vernon aided and abetted Lassiter in making false statements on loan applications.  Vernon recruited Jackson into the scheme and helped her fill out a loan application used by Lassiter.  He also signed Jackson's signature on purchase agreements and loan applications used by Lassiter.  Therefore, a reasonable jury could have concluded that he associated himself with the Investor's Outlet scheme, he participated throughout the scheme, and he sought to make the scheme succeed, including the scheme to make false statements in loan applications.  Iglesias, 915 F.2d at 1528.  Accordingly, the district court did not err by denying either Joel's or Vernon's motions for acquittal.

As for Vernon's Confrontation Clause claim, we are unconvinced.  The Sixth Amendment's Confrontation Clause guarantees a defendant an opportunity for effective cross-examination, but it does not guarantee cross-examination that is effective in any way he may wish.  United States v. Jones, 601 F.3d 1247, 1263

12

(11th Cir. 2010). His rights are satisfied if sufficient information is elicited from the witness for the jury to adequately assess the witness's possible motive or bias. United States v. Orisnord, 483 F.3d 1169, 1179 (11th Cir. 2007). The district court has wide latitude to impose reasonable limits on cross-examination. Barrington, 648 F.3d at 1188. A defendant may not introduce his own exculpatory statement through another witness without subjecting himself to cross-examination. United States v. Cunningham, 194 F.3d 1186, 1199 (11th Cir. 1999).

Here, the district court did not abuse its discretion by limiting Vernon's cross-examination of Leslie Nelson or by denying the motion to sever. During cross-examination, Nelson admitted that her interview notes conflicted with part of her testimony, and that she did not remember whether she showed documents to Vernon during her interview with him. This information allowed the jury to adequately assess her credibility. Furthermore, the district court properly prevented Vernon from admitting exculpatory statements through Nelson's testimony without subjecting himself to cross-examination.

Finally, we conclude that Vernon's argument that that the district court erroneously allowed the government to amend the indictment is meritless. In an indictment, the government must notify the defendant that it will seek criminal forfeiture as part of the sentence. Fed.R.Crim.P. 32.2(a). The amendment of an indictment is per se reversible error. United States v. Williams, 334 F.3d 1228,

1232 (11th Cir. 2003). However, a variance from an indictment only requires reversal when a defendant's rights were substantially prejudiced by the variance. Id. An erroneous citation in an indictment is not grounds for dismissal of the indictment or reversal of a conviction unless the defendant was misled by the indictment and thereby prejudiced. Fed.R.Crim.P. 7(c)(2).

In this case, the district court did not err by permitting the government to change the statutory basis for Vernon's criminal forfeiture judgment. In his indictment, Vernon was given notice that the government sought criminal forfeiture. He argues that the government's use of an incorrect statute as authority for that forfeiture is substantively erroneous, but we do not dismiss an indictment for an erroneous citation unless it prejudices a defendant. Vernon does not demonstrate how the erroneous citation prejudiced him. Therefore, the district court correctly concluded that the erroneous statutory citation was a scrivener's error, and it did not err by permitting the government to change its authority for criminal forfeiture.

**AFFIRMED.**