[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10611
Non-Argument Calendar
_____

D.C. Docket No. 8:13-cr-00162-SCB-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KAMRAN ROUHANI,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 13, 2015)

Before HULL, MARCUS, and MARTIN, Circuit Judges.

PER CURIAM:

Kamran Rouhani appeals his convictions and sentence of 12 months and 1 day of imprisonment following a jury verdict finding him guilty of three counts of wire fraud in violation of 18 U.S.C. § 1343.  Rouhani's conviction was based on three emails he sent on April 25, April 29, and June 10, 2008, in his capacity as the owner and operator of Aviation Engineering Consultants, Inc. ("AECI") from AECI's office in Florida to the office of L-3 Communications Integrated Systems, LP ("L-3") in Waco, Texas.  L-3 selected AECI to manufacture air duct assemblies for use in the aircraft it was building for the United States Navy.  The two purchase orders from L-3 included strict requirements for how the parts would be manufactured, tested, and delivered.  Specifically relevant to this case, the contracts required that AECI use only certified welders to weld the ducts and that AECI ensure that all the ducts passed both dye penetrant testing and hydrostatic pressure testing.  The e-mails underlying Rouhani's conviction included certifications of compliance, signed by Rouhani, stating that the aircraft parts satisfied the contractual requirements.

On appeal, Rouhani argues that his conviction should be reversed because the government did not establish sufficient facts for a reasonable jury to find beyond a reasonable doubt that he intentionally participated in a scheme to defraud L-3 and used the interstate wires to further the scheme.  As to his sentence, Rouhani argues that the district court clearly erred in concluding that he committed

2

perjury at trial and imposing a two-level sentence enhancement as a result. He also argues that his total sentence of 12 months and 1 day is substantively unreasonable. Finally, he argues that the district court clearly erred in calculating the restitution and forfeiture money judgment amounts. Specifically regarding the restitution amount, he argues that the district court erred in failing to offset the $28,640.09 amount by the market value of some of the ducts that were later shown to have passed hydrostatic pressure testing. Rouhani finally challenges the forfeiture amount based upon the absence of evidence that he personally received the $28,640.09.

We address each issue in turn.

### I.

We review de novo Rouhani's challenge to the sufficiency of the evidence supporting his jury verdict. United States v. Jiminez, 564 F.3d 1280, 1284 (11th Cir. 2009). We must determine whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt. Id. at 1284–85. In making this determination, we view the evidence "in the light most favorable to the government, and draw[] all reasonable factual inferences in favor of the jury's verdict." Id. at 1284.

To support a conviction for wire fraud under 18 U.S.C. § 1343, the government must prove: "(1) intentional participation in a scheme to defraud, and

3

(2) the use of the interstate . . . wires in furtherance of that scheme." United States

v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009).  "A scheme to defraud requires

proof of material misrepresentations, or the omission or concealment of material

facts reasonably calculated to deceive persons of ordinary prudence."  United

States v. Hasson, 333 F.3d 1264, 1270–71 (11th Cir. 2003) (internal citations

omitted).  "A material misrepresentation is one having a natural tendency to

influence, or capable of influencing, the decision maker to whom it is addressed."

Id. at 1271.  To prove intent, the government must establish that the defendant

believed that the victim would act or refrain from acting in reliance upon his

misrepresentation.  United States v. Bradley, 644 F.3d 1213, 1239 n.58 (11th Cir.

2011) (quoting Pelletier v. Zweifel, 921 F.2d 1465, 1499 (11th Cir. 1991)).  A jury

may infer such an intent from the defendant's conduct.  Id. at 1239 (quoting

Maxwell, 579 F.3d at 1301).  Additionally, when a defendant takes the stand and

testifies that he never intended to defraud anyone, the jury is free to disbelieve the

defendant's statements "and to take them as substantive evidence to the contrary."

United States v. Ellisor, 522 F.3d 1255, 1272 (11th Cir. 2008).  Finally, to prove

that the interstate wires were knowingly used in furtherance of the scheme, the

government is required to establish only that the "interstate wire transmission

[wa]s . . . incident to an essential part of the scheme or a step in the plot."  Hasson,

4

333 F.3d at 1273 (internal quotation marks omitted).  It is not necessary that the transmitted information include a misrepresentation.  Id. at 1272.

Viewing the evidence de novo in the light most favorable to the government, a reasonable jury could conclude that Rouhani committed wire fraud.  The evidence showed that Rouhani allowed uncertified welders to weld the ducts intended for L-3, even though the purchase order contracts required that AECI use only certified welders.  Rouhani also observed some of the quality testing of the ducts and spoke with the employees involved in the testing.  As a result, he was aware that the hydrostatic pressure testing did not meet the requirements of the contracts and that AECI did not have the resources or the proper tools to conduct the contractually-mandated testing.  Rouhani nevertheless sent certifications of compliance to L-3 via e-mail, stating that the ducts were fully compliant.  Based on this evidence, a reasonable jury could find that Rouhani intentionally participated in a scheme to defraud L-3 and used the interstate wires in furtherance of that scheme.  We therefore affirm Rouhani's convictions.

## II.

In evaluating  a sentencing enhancement for obstruction of justice, we review the district court's findings of fact for clear error and review de novo its application of the factfindings to the sentencing guidelines.  United States v. Doe, 661 F.3d 550, 565 (11th Cir. 2011).  To find clear error, we must have a "definite

5

and firm conviction" that a mistake has been made. United States v. Rodriguez-Lopez, 363 F.3d 1134, 1137 (11th Cir. 2004) (quotation omitted). The government bears the burden to establish the necessary facts to support a sentencing enhancement by a preponderance of the evidence. United States v. Perez-Oliveros, 479 F.3d 779, 783 (11th Cir. 2007).

The United States Sentencing Guidelines provide a two-level enhancement for obstruction of justice. U.S. Sentencing Guidelines § 3C1.1. The enhancement is appropriate where the district court finds the defendant committed, suborned, or attempted to suborn perjury. Id. comment. n.4(B). For purposes of § 3C1.1, perjury is defined as giving "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." United States v. Dunnigan, 507 U.S. 87, 94, 113 S. Ct. 1111, 1116 (1993), abrogated on other grounds by United States v. Wells, 519 U.S. 482, 117 S. Ct. 921 (1997). The sentencing court should make independent findings that establish the elements of perjury. Dunnigan, 507 U.S. at 95, 113 S. Ct. at 1117. "Although it is preferable that the district court make specific findings by identifying the materially false statements individually, it is sufficient if the court makes a general finding of obstruction encompassing all the factual predicates of perjury." United States v. Diaz, 190 F.3d 1247, 1256 (11th Cir. 1999).

The district court did not err in finding that Rouhani had committed perjury and imposing a two-level enhancement under § 3C1.1. The district court first made generalized findings that Rouhani willfully lied about material facts, including the welder certifications and the testing of the ducts. The district court then went on to identify specific statements that were materially false. The court explained that (1) with regard to the welder certifications, Rouhani had testified "everything from . . . they were certified welders, to it was L-3's responsibility to certify the welders, to they had some sort of certification that wasn't really official certification"; and (2) with regard to the testing of the ducts, Rouhani's testimony "was everything from, yes, [AECI] did send the information regarding the testing; to yes, [AECI] did the testing in-house, even though he might have suggested that he sent the parts out to be tested." Sentencing Tr. at 9. We affirm the district court's application of § 3C1.1.

## III.

We review the reasonableness of a sentence using a deferential abuse-of-discretion standard. Gall v. United States, 552 U.S. 38, 41, 128 S. Ct. 586, 591 (2007). In reviewing for substantive reasonableness, we examine the totality of the circumstances and ask "whether the statutory sentencing factors in [18 U.S.C.] § 3553(a) support the sentence in question." United States v. Gonzalez, 550 F.3d 1319, 1324 (11th Cir. 2008) (per curiam). The party challenging the sentence has

the burden of demonstrating that the sentence is unreasonable in light of the record and factors outlined in § 3553(a).  United States v. Talley, 431 F.3d 784, 788 (11th Cir. 2005) (per curiam), abrogated on other grounds by Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456 (2007).  We will remand for resentencing only if "we are left with the definite and firm conviction that he district court committed a clear error of judgment in weighing the § 3553(a) factors by arriving at a sentence that lies outside the range of reasonable sentences dictated by the facts of the case." United States v. Irey, 612 F.3d 1160, 1190 (11th Cir. 2010) (en banc) (quotation omitted).

Under § 3553(a), the district court must impose a sentence "sufficient, but not greater than necessary, to comply with the purposes" listed in § 3553(a)(2), including the need to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to deter criminal conduct, to protect the public from the defendant's future criminal conduct, and to provide the defendant effective correctional treatment.  See 18 U.S.C. § 3553(a).  In imposing a particular sentence, the district court must also consider the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, the applicable guideline range, the pertinent policy statements of the Sentencing Commission, the need to avoid unwarranted

sentencing disparities, and the need to provide restitution to victims. Id. § 3553(a)(1), (3)–(7).

The weight given to any specific § 3553(a) factor is committed to the sound discretion of the district court. United States v. Williams, 526 F.3d 1312, 1322 (11th Cir. 2008) (per curiam). We have recognized that "there is a range of reasonable sentences from which the district court may choose." Talley, 431 F.3d at 788. A sentence that falls within the guideline range is one indicator of reasonableness. See id. A sentence imposed well below the statutory maximum may also indicate that it is reasonable. Gonzalez, 550 F.3d at 1324. However, the district court can abuse its discretion when it (1) fails to consider factors that were due significant weight, (2) gives an improper or irrelevant factor significant weight, or (3) commits a clear error of judgment by balancing the proper factors unreasonably. Irey, 612 F.3d at 1189.

Rouhani has not shown that his sentence is unreasonable, or that the district court committed a clear error of judgment in weighing the § 3553(a) factors. As the district court observed, Rouhani's offense was serious due to the nature of the work involved—namely, the production of faulty aircraft parts. The district court also noted that Rouhani had not testified truthfully at trial. The district court recognized, however, that it did not appear that Rouhani was a danger to the community or that the offense would be repeated. Furthermore, the district court

found that many people depend on Rouhani, not only in his business but also in his personal life, and Rouhani had a history of trying to be a good citizen and doing good deeds. Based on these factors, the district court granted a downward variance from the guideline range of 18-to 24-months imprisonment, and imposed a sentence of 12 months and 1 day for all counts, to run concurrently.

The district court did not abuse its discretion in evaluating the § 3553(a) factors, thus Rouhani fails to show that his sentence is substantively unreasonable. We affirm the sentence.

IV.

We review de novo the legality of a restitution order, but we review for clear error the underlying findings of fact relevant to the order. United States v. Brown, 665 F.3d 1239, 1252 (11th Cir. 2011) (per curiam). As to a forfeiture money judgment, we review de novo the district court's legal conclusions and its findings of fact for clear error. United States v. Hoffman-Vaile, 568 F.3d 1335, 1340 (11th Cir. 2009). With regard to arguments raised for the first time on appeal, however, the plain error standard of review applies. United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Under the plain error standard of review, the defendant must show (1) an error, (2) that is plain, (3) that affects the defendant's substantial rights, and (4) that seriously affects the fairness, integrity, or public reputation of judicial proceedings. Puckett v. United States, 556 U.S. 129, 135,

129 S. Ct. 1423, 1429 (2009) (quotations omitted).  An error is plain if it is "clear or obvious, rather than subject to reasonable dispute."  Id.

### A.

Under the Mandatory Victims Restitution Act, the district court is required to order a defendant to make restitution upon his conviction for any crime "in which an identifiable victim or victims has suffered a . . . pecuniary loss."  18 U.S.C. § 3663A(a)(1), (c)(1)(B).  The district court is required to order restitution "to each victim in the full amount of each victim's losses."  Id. § 3664(f)(1)(A).  This statutory mandate requires that a restitution award "be based on the amount of loss actually caused by the defendant's conduct."  United States v. Huff, 609 F.3d 1240, 1247 (11th Cir. 2010) (quotation omitted).

The government bears the burden to establish the restitution amount by a preponderance of the evidence.  United States v. Futrell, 209 F.3d 1286, 1290 (11th Cir. 2000) (per curiam); see also 18 U.S.C. § 3664(e).  "The [g]overnment must demonstrate the amount of such loss with evidence bearing sufficient indicia of reliability to support its probable accuracy."  United States v. Singletary, 649 F.3d 1212, 1217 n.21 (11th Cir. 2011) (quotation omitted).  However, "the determination of the restitution amount is by nature an inexact science."  Huff, 609 F.3d at 1248 (quotation omitted).  That being the case, where difficulties arise in establishing the exact amount of restitution, a district court may accept a

11

"reasonable estimate" of the loss based on the evidence presented.  See Futrell, 209 F.3d at 1291–92.  When making a reasonableness determination of the restitution amount, district courts should "resolv[e] uncertainties with a view toward achieving fairness to the victim").   Huff, 609 F.3d at 1248 (quotation omitted).

When ordering restitution, a district court should explain its findings with "sufficient clarity" so as to enable this Court to perform its function on appellate review.  Id.  Specifically, the district court should make factual findings as to: (1) whether the victim suffered a loss; and (2) the amount of the actual loss suffered. Id. at 1249.

The district court's calculation of the restitution amount was not clearly erroneous.  At sentencing, the government established by a preponderance of the evidence that the amount of L-3's losses was $28,640.09.  L-3 had to remove the non-conforming ducts from use, given that a high percentage of the ducts failed retesting by L-3 and the ducts were intended for high-risk use on an aircraft, requiring heightened adherence to quality standards.  Furthermore, the district court did not clearly err in failing to limit the restitution to the amount Rouhani personally received from L-3, because the $28,640.09 amount constituted the full amount of L-3's losses.  See 18 U.S.C. § 3664(f)(1)(A).

Because he failed to preserve this issue for appeal, we review Rouhani's argument regarding offsetting the $28,640.09 amount by the market value of the

12

ducts for plain error.  The district court did not plainly err in failing to offset the $28,640.09 amount by the value of the four ducts which later passed hydrostatic testing.  Those ducts still did not comply with the dye penetrant testing and certified welder requirements of the purchase order contracts.  Thus, per L-3's standards the ducts could not be used to manufacture airplanes and offered no value to offset.

### B.

The criminal forfeiture statute only extends to wire fraud cases if the violation "affect[s] a financial institution."  18 U.S.C. § 982(a)(2).  However, pursuant to 28 U.S.C. § 2461(c), criminal forfeiture is available in cases beyond the reach of a specific criminal forfeiture statute where civil forfeiture is legally authorized.  United States v. Padron, 527 F.3d 1156, 1161–62 (11th Cir. 2008); see also § 2461(c).

Civil forfeiture is legally authorized for wire fraud convictions because, under 18 U.S.C. § 981(a)(1)(C), the government may seek civil forfeiture of any property which constitutes or is derived from proceeds traceable to, among other things, any offense constituting "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7).  That statutory definition includes wire fraud offenses.  See § 1956(c)(7)(A) (citing 18 U.S.C. § 1961(1)).  Under § 981(a) and § 2461(c), the forfeiture provisions charged in this case, the government may seek forfeiture of

the "proceeds" of the wire fraud convictions, § 981(a)(1)(C), which means "property of any kind obtained directly or indirectly, as the result of the commission of the [wire fraud], and any property traceable thereto, and is not limited to the net gain or profit realized from the offense." § 981(a)(2)(A). Forfeiture in such criminal proceedings is in personam, "serves no remedial purpose, is designed to punish the offender, and cannot be imposed upon innocent owners." United States v. Bajakajian, 524 U.S. 321, 332, 118 S. Ct. 2028, 2035 (1998); see also United States v. Gilbert, 244 F.3d 888, 918–19 (11th Cir. 2001), superseded by rule on other grounds as stated in United States v. Marion, 562 F.3d 1330, 1340–41 (11th Cir. 2009) (per curiam). "Because it seeks to penalize the defendant for his illegal activities, in personam forfeiture reaches only that property, or portion thereof, owned by the defendant." Id. at 919; see also United States v. Contorinis, 692 F.3d 136, 145 (2d Cir. 2012) (reversing a forfeiture order because a defendant "cannot be ordered to forfeit profits that he never received or possessed").

The district court erred in ordering Rouhani to forfeit $28,640.09 in proceeds without making any findings as to whether Rouhani ever received or possessed the proceeds as a result of his wire fraud crime. Rouhani's attorney explained at sentencing that "in this case it's clearly not a situation where L-3 wrote the checks to Mr. Rouhani. They went to the corporation and were distributed to whatever

14

costs the corporation may have." The district court nonetheless concluded that "it's Mr. Rouhani that should suffer the adverse effects of the forfeiture money judgment." But the government did not submit any evidence establishing this fact. Though the government's motion for a forfeiture money judgment claims that "Rouhani . . . received payment in the amount of $28,640.09 for the parts," at sentencing the government only established that AECI received the $28,640.09 in proceeds. There is no evidence that any of the proceeds came to Rouhani personally, and AECI, which did receive the proceeds, is neither a co-defendant nor a co-conspirator.[1] We therefore vacate the district court's forfeiture order and the resulting portion of the judgment against Rouhani and remand for further proceedings.

## AFFIRMED IN PART, VACATED IN PART AND REMANDED.

---

[1] Though Rouhani's ownership of AECI might satisfy the "alter ego" theory of liability, see United States v. McLaughlin, 565 F. App'x. 470, 476–77 (6th Cir. 2014), the district court made no independent factual analysis that would support awarding a forfeiture money award against Rouhani on that basis. Cf. United States v. Peters, 257 F.R.D. 377, 385–87 (W.D.N.Y. 2009) (setting aside corporate formalities and awarding a forfeiture money judgment against a defendant for fraudulent loan proceeds received by the corporation after a detailed factual analysis of the relationship between the defendant and the corporation).

15